Lee Otis GELLINGTON, Plaintiff-Appellant,

v.

CHRISTIAN METHODIST EPISCOPAL CHURCH, INC., Defendant-Appellee.

No. 99-10603.

United States Court of Appeals,

Eleventh Circuit.

Feb. 17, 2000.

Appeal from the United States District Court for the Northern District of Alabama. (No. 997-02719-CV-P-W), Sam C. Pointer, Jr., Judge.

Before BLACK, Circuit Judge, and GODBOLD and FAY, Senior Circuit Judges.

BLACK, Circuit Judge:

Appellant Lee Otis Gellington brought this action against his former employer, Appellee Christian Methodist Episcopal Church, Inc., alleging he was retaliated against and constructively discharged in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. The district court granted summary judgment in favor of Appellee after concluding that the ministerial exception barred Appellant from bringing suit under Title VII against Appellee. Appellant appeals, presenting the narrow question of whether the ministerial exception survives the Supreme Court's decision in *Employment Division, Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). We conclude the ministerial exception to Title VII survives the Supreme Court's holding in *Smith,* and accordingly affirm the order of the district court.

## I. BACKGROUND

Appellant is an ordained minister of the Christian Methodist Episcopal (CME) Church. CME Church is divided into ten Episcopal districts. Beginning in 1995, Appellant served as a minister in a church located in Mobile, Alabama, which is part of the Fifth Episcopal district. One of Appellant's co-workers at the Mobile church was Veronica Little, who also was employed as a minister. On more than one occasion, Little confided in Appellant that her immediate supervisor had made sexual advances toward her, and she asked

Appellant for guidance on how to handle this situation. Appellant advised and aided Little in preparing an official complaint to the church elders. Shortly after he aided Little in her complaint, Appellant was reassigned to a church over 800 miles away from his home at a substantial reduction in salary. Appellant states that he could not comply with this reassignment and consequently was forced to resign.

Appellant brought this action, alleging Appellee retaliated against him and constructively discharged him for aiding Little in her sexual harassment complaint. Appellee then filed a motion for summary judgment. The district court granted the motion because it concluded that the ministerial exception to Title VII, created in *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.1972), barred Appellant from bringing his claim against Appellee. Appellant appeals this order.

## II. ANALYSIS

We review de novo a grant of summary judgment by the district court, applying the same standards. *See Harris v. H & W Contracting Co.,* 102 F.3d 516, 518 (11th Cir.1996). We view the evidence, and all factual inferences that can reasonably be drawn from the evidence, in the light most favorable to the nonmoving party. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

There is no question that the district court's grant of summary judgment would have been correct prior to 1990. *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.1972), established that Title VII is not applicable to the employment relationship between a church and its ministers. *See id.* at 560.[1] In *McClure,* a minister of the Salvation Army sued the church under Title VII, alleging she was discriminated against on the basis of sex and discharged because of her complaints regarding this alleged discrimination. *See id.* at 555. After noting that the First Amendment has built a "wall of separation" between church and state, and that there is a long history of allowing churches to be free from state interference in matters of church governance, the

---

[1]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Fifth Circuit held that it would not apply Title VII to the minister-church employment relationship. *See id.* at 558-560. The court reasoned that applying Title VII to this relationship "would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment." *Id.* at 560. The court concluded that matters such as "the determination of a minister's salary, his place of assignment, and the duty he is to perform in furtherance of the religious mission of the church" were all functions with which the state could not interfere. *Id.* at 559.

Since *McClure,* many other Circuits also have adopted the ministerial exception to Title VII. *See, e.g., Young v. Northern Illinois Conf. of United Methodist Church,* 21 F.3d 184 (7th Cir.1994) (holding that Free Exercise Clause forbids review of church's employment decisions involving clergy); *Minker v. Baltimore Annual Conf. of United Methodist Church,* 894 F.2d 1354 (D.C.Cir.1990) (concluding that allowing minister to sue church under ADEA would violate Free Exercise Clause); *Natal v. Christian and Missionary Alliance,* 878 F.2d 1575 (1st Cir.1989) (following *McClure* in concluding that clergyman is barred by First Amendment from suing not-for-profit religious organization for wrongful termination); *Rayburn v. General Conf. of Seventh-Day Adventists,* 772 F.2d 1164 (4th Cir.1985) (holding that plaintiff's Title VII challenge to denial of pastoral appointment was barred by religion clauses of First Amendment).

Appellant argues that although *McClure* was the law of this Circuit prior to 1990, the ministerial exception to Title VII created in *McClure* cannot exist subsequent to the Supreme Court's decision in *Employment Division, Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* Alfred Smith and Galen Black challenged a determination that their religious use of peyote, which resulted in their dismissal from employment, was "misconduct" disqualifying them from receiving Oregon unemployment compensation benefits. *See id.* at 874, 110 S.Ct. at 1597-98. The claimants argued that Oregon violated the Free Exercise Clause of the First Amendment when it denied them unemployment benefits solely because of their sacramental use of peyote, a controlled substance under Oregon law. *See id.* The Court held the Free Exercise Clause did not bar Oregon from prohibiting the

3

religious use of peyote, explaining that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes ... conduct that his religion prescribes." *Id.* at 879, 110 S.Ct. at 1600 (citations and internal quotation marks omitted). The Court also rejected the argument that Oregon at least be forced to satisfy the compelling interest test before applying a neutral law of general applicability to religion-based conduct. *See id.* at 885, 110 S.Ct. at 1603.[2]

Appellant argues that because *Smith* held that religious beliefs do not excuse compliance with a generally applicable law, Appellee cannot evade the legal obligations imposed by Title VII simply because it is a religious organization. Appellant contends that because Title VII is a neutral law of general applicability, the First Amendment does not bar the application of Title VII to Appellee even if its application would burden the free exercise of religion.

Two Circuits have concluded the ministerial exception survives *Smith.* The D.C. Circuit first considered this question in *EEOC v. Catholic University of America,* 83 F.3d 455 (D.C.Cir.1996). A Catholic nun brought a Title VII sex discrimination suit against the University after she was denied tenure. *See id.* at 459. In addressing the plaintiff's claim, the court noted that the "Supreme Court has recognized that government action may burden the free exercise of religion" in two ways: "by interfering with a believer's ability to observe the commands or practices of his faith, and by encroaching on the ability of a church to manage its internal affairs." *Id.* at 460 (citations omitted). The court then noted that the ministerial exception was developed, in part, to protect churches from the second type of government interference. *See id.* at 462. The court reasoned, however, that *Smith* focused exclusively on the first prong of the free exercise clause, the individual's ability to observe the practices of his or her religion. *See id.* at 462. Concluding that *Smith*

---

[2]Congress attempted to reinstate the compelling interest test with respect to laws of general applicability that would apply to religious practices in the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq. The Supreme Court, however, held that RFRA was unconstitutional as applied to the states because it exceeded the scope of Congress' power under § 5 of the Fourteenth Amendment. *See City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

therefore was not applicable to the ministerial exception, the court stated "the burden on free exercise that is addressed by the ministerial exception is of a fundamentally different character from that at issue in *Smith* and in the cases cited by the Court in support of its holding.... [T]he ministerial exception does not present the dangers warned of in *Smith.*" *Id.*

The D.C. Circuit also concluded the Supreme Court's rejection in *Smith* of the compelling interest test did not affect the continuing existence of the ministerial exception. *See id.* at 462-63. The court noted that although some of the cases applying the ministerial exception cited the compelling interest test, the exception was not based on this test, but rather on a "long line of Supreme Court cases that affirm the fundamental right of churches to 'decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.' " *Id.* at 462 (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,* 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952)). Consequently, the D.C. Circuit held that the rejection of the compelling interest test did not alter this "century-old affirmation of a church's sovereignty over its own affairs." *Id.* at 463.

The Fifth Circuit has also held that the ministerial exception to Title VII survives *Smith.* In *Combs v. Central Texas Annual Conf. of United Methodist Church,* 173 F.3d 343 (5th Cir.1999), the court considered a Title VII sex discrimination claim brought by a female clergy member against her church. *See id.* at 345. In concluding that the suit was barred by the ministerial exception, the court agreed with both the reasoning and the conclusion of the D.C. Circuit, noting

> *Smith'* s language is clearly directed at the first strand of free exercise law, where an individual contends that, because of his religious beliefs, he should not be required to conform with generally applicable laws. The concerns raised in *Smith* are quite different from the concerns raised by Reverend Comb's case, which pertains to interference in internal church management.

*Id.* at 349. The court reasoned that the constitutional protection of religious freedom afforded to churches in employment actions involving clergy exists even when such actions are not based on issues of church doctrine or ecclesiastical law. *See id.* at 350. The court also concluded that this "fundamental right of

5

churches to be free from government interference in their internal management and administration" had not been affected by the *Smith* Court's refusal to apply the compelling interest test. *Id.*

We agree with the Fifth and D.C. Circuits and hold that the ministerial exception created in *McClure* has not been overruled by the Supreme Court's decision in *Smith.* The *Smith* decision focused on the first type of government infringement on the right of free exercise of religion—infringement on an individual's ability to observe the practices of his or her religion. The second type of government infringement—interference with a church's ability to select and manage its own clergy—was not at issue in *Smith.* The Court's concern in *Smith* was that if an individual's legal obligations were contingent upon religious beliefs, those beliefs would allow each individual " 'to become a law unto himself.' " *Smith,* 494 U.S. at 885, 110 S.Ct. at 1603 (quoting *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 167, 25 L.Ed. 244 (1879)). The ministerial exception does not subvert this concern; it was not developed to provide protection to individuals who wish to observe a religious practice that contravenes a generally applicable law. Rather, the exception only continues a long-standing tradition that churches are to be free from government interference in matters of church governance and administration. *See, e.g., Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 107, 73 S.Ct. 143, 150, 97 L.Ed. 120 (1952) ("Legislation that regulates church administration, the operation of the churches, [or] the appointment clergy ... prohibits the free exercise of religion"). Also, because the ministerial exception is based on this tradition and not on strict scrutiny, the Court's rejection in *Smith* of the compelling interest test does not affect the continuing vitality of the ministerial exception.

We noted in *McClure* "[t]he relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose." 460 F.2d at 558-559. An attempt by the government to regulate the relationship between a church and its clergy would infringe upon the church's right to be the sole governing body of its ecclesiastical rules and religious doctrine.

Furthermore, applying Title VII to the employment relationship between a church and its clergy would involve "excessive government entanglement with religion" as prohibited by the Establishment Clause

6

of the First Amendment. *See Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Investigation by a government entity into a church's employment of its clergy would almost always entail excessive government entanglement into the internal management of the church. A church's view on whether an individual is suited for a particular clergy position cannot be replaced by the courts' without entangling the government "in questions of religious doctrine, polity, and practice." *Jones v. Wolf,* 443 U.S. 595, 603, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979). The Establishment Clause thus also mandates that churches retain exclusive control over strictly ecclesiastical matters.

## III. CONCLUSION

For the foregoing reasons, we find that the Free Exercise and Establishment Clauses of the First Amendment prohibit a church from being sued under Title VII by its clergy. The district court therefore properly granted Appellee's motion for summary judgment.

AFFIRMED.