John BOLLARD, Plaintiff–Appellant,

v.

The CALIFORNIA PROVINCE OF the SOCIETY OF JESUS; The Maryland Province of the Society of Jesus; The Oregon Province of the Society of Jesus; The Jesuit Conference; Father John Privett, S.J.; Father Andrew Sotelo, S.J.; Father Thomas Gleeson, S.J.; Father Anton Harris, S.J., Defendants–Appellees.

No. 98–16194.

United States Court of Appeals,
Ninth Circuit.

Filed May 5, 2000

Before: THOMPSON and W. FLETCHER, Circuit Judges, and MOLLWAY,[1] District Judge.

Order; Dissent by Judge WARDLAW

## ORDER DENYING REHEARING

The panel, as constituted above, has voted unanimously to deny the petitions for rehearing. Judge W. Fletcher voted to deny the petitions for rehearing en banc, and Judges Thompson and Mollway so recommended.

A judge of the court called for a vote on the petitions for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R.App. P. 35(f).

The petitions for rehearing and the petitions for rehearing en banc are DENIED.

WARDLAW, Circuit Judge, with whom KOZINSKI, O'SCANNLAIN, and KLEINFELD, Circuit Judges, join, dissenting from denial of rehearing en banc:

At stake in this case is whether the First Amendment continues to protect the Free Exercise and Establishment Clause rights of religious institutions in their church administration, operation, and selection of clergy in the form of the ministerial exception to Title VII. The panel opinion narrows the ministerial exception nearly to the point of extinction by allowing Bollard, a Jesuit novice studying for ordination into the Catholic priesthood, to maintain his Title VII claim of alleged sexual harassment against the Society of Jesus. In so doing, the panel opinion undermines over a century of Supreme Court jurisprudence, runs contrary to every other United States Court of Appeals that has had occasion to visit the issue, and further evidences the confusion among lower courts over the nature of the fundamental religious freedoms protected by the First Amendment. *See KDM v. Reedsport Sch. Dist.,* 210 F.3d 1098 (9th Cir.2000) (O'Scannlain, J., dissenting from denial of rehearing en banc) (citing *Columbia Union College v. Clark,* 527 U.S. 1013, 119 S.Ct. 2357, 2358, 144 L.Ed.2d 252 (1999) (Thomas, J. dissenting from the denial of certiorari)).

The panel opinion employs a flawed analysis of the nature of Bollard's allegations and damage claims, the necessary intrusion into church affairs litigation of those claims will entail, and the ministerial exception itself. Bollard does not claim that he was constructively discharged from employment by the Jesuits as a high school teacher, counselor, or youth advisor. Bollard's complaint is that the Jesuits prevented him from becoming a *Jesuit priest* by failing to address his alleged sexual harassment. Thus, Bollard's future in the priesthood is at the heart of his claim. This directly implicates the minister-church relationship, an undisputed matter of core ecclesiastical concern. *See, e.g., Serbian E. Orthodox Diocese v. Milivoje-*

---

**1.** Honorable Susan Oki Mollway, United States District Judge for the District of Hawaii, sitting by designation.

*vich,* 426 U.S. 696, 717, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (noting "questions of church discipline and composition of the church hierarchy are at the core of ecclesiatical concern"); *EEOC v. Pacific Press Publ'g Ass'n,* 676 F.2d 1272, 1278 (9th Cir.1982) (recognizing Fifth Circuit ministerial exception, and noting that "matters touching" upon the "relationship [between a church and its ministers] must necessarily be recognized as of prime ecclesiastical concern").[1] The judiciary must now evaluate Bollard's claim that the Jesuit Order deprived him of a livelihood as a priest and that he is therefore entitled to compensation for the loss of a lifetime career in the Jesuit Order. This is precisely what the Constitution forbids.

For over a century, the Supreme Court has restricted the government from interfering in the governance, discipline, or doctrine of religious organizations. *See, e.g., Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1871) (holding that church decisions on "questions of discipline, or of faith, or ecclesiastical rule, custom, or law" are final); *Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1, 16, 50 S.Ct. 5, 74 L.Ed. 131 (1929) (finding that "it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them"); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 107, 73 S.Ct. 143, 97 L.Ed. 120 (1952) (recognizing that the Free Exercise Clause of the First Amendment prohibits "legislation that regulates church administration, the operation of churches [or] appointment of clergy"); *Kreshik v. St. Nicholas Cathedral,* 363 U.S. 190, 191, 80 S.Ct. 1037, 4 L.Ed.2d 1140 (1960) (per curiam) (holding that constitutional principles prevent the judiciary, as well as the legislature, from interfering with the free exercise of religion); *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713, 717, 96 S.Ct. 2372, 49

L.Ed.2d 151 (1976) (holding that "religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them"). Though the concept originated through application of the Free Exercise Clause, the Supreme Court has held that the Establishment Clause also protects church autonomy in internal religious matters. *See, e.g., NLRB v. Catholic Bishop,* 440 U.S. 490, 502–03, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979) (holding that NLRB supervision of teacher-parochial school labor relations risked excessive entanglement of government with religion, as it would "necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission").

As the district court opinion correctly points out, resolution of Bollard's sexual harassment claims will require the judicial branch to delve into religious matters outside the judiciary's province, such as conditions of his association with the Jesuits; disciplinary and supervisory decisions they made; whether Bollard would have otherwise been ordained into the priesthood; and the "extent to which [he] would be 'made whole' from loss of a life of spiritual service or the proper compensation for the 'emotional pain' one suffers from this deprivation." *Bollard v. California Province of the Soc'y of Jesus,* No. C 97–3006, 1998 WL 273011, at *5 (N.D.Cal. May 15, 1998). Every other circuit that has addressed the scope of the ministerial exception agrees that such an inquiry is barred by the Religion Clauses. *See Gellington v. Christian Methodist Episcopal Church, Inc.,* 203 F.3d 1299, 1304 (11th Cir.2000) ("Investigation ... into a church's employment of its clergy would almost always entail excessive government entanglement into the internal management of the church."); *Combs v. Central Texas Annual Conf. of*

---

1. In *American Friends Service Comm. Corp. v. Thornburgh,* 951 F.2d 957, 960 (9th Cir.1991), we abrogated the use of the balancing test for non-ministerial workers set forth in *Pacific Press.* Thus, the ministerial exception is unaffected by *American Friends.*

*United Methodist Church,* 173 F.3d 343, 350 (5th Cir.1999) (holding that Title VII claims by ministers against their church necessarily require "secular authorities [to] intrude into church governance in a manner that would be inherently coercive, even if the alleged [misconduct] were purely nondoctrinal"); *EEOC v. Catholic Univ. of Am.,* 83 F.3d 455, 467 (D.C.Cir.1996) (holding that Religion Clauses bar nun's Title VII claim for denial of university tenure); *Young v. Northern Ill. Conf. of United Methodist Church,* 21 F.3d 184, 187–88 (7th Cir.1994) (holding that Free Exercise Clause precluded Title VII sex and race discrimination claim for denial of promotion and discontinuance of minister status); *Scharon v. St. Luke's Episcopal Presbyterian Hosps.,* 929 F.2d 360, 363 (8th Cir.1991) ("To allow Scharon's case to continue would necessarily lead to the kind of inquiry into religious matters that the First Amendment forbids."); *Rayburn v. General Conf. of Seventh–Day Adventists,* 772 F.2d 1164, 1171 (4th Cir.1985) (holding that Religion Clauses barred Title VII sex and race discrimination claims for denial of pastoral position).

As the district court wrote, "[t]he ministerial exception is a well-established compromise between two extremely important interests—the interest in eradicating discrimination in employment and the right of a church to manage its religious affairs free from governmental interference." *Bollard,* 1998 WL 273011, at *3. The panel opinion deviates from that well-established compromise, counter to Supreme Court authority and that of our sister circuits. Because the panel's decision portends serious consequences for one of the bedrock principles of our country's formation—religious freedom—it is undeniably an issue of exceptional importance.

I therefore respectfully dissent from the denial of the petition for rehearing en banc.