WEISHUHN v CATHOLIC DIOCESE OF LANSING

Docket No. 287174. Submitted December 9, 2009, at Detroit. Decided January 26, 2010, at 9:00 a.m.

Madeline Weishuhn brought an action in the Genesee Circuit Court, Archie L. Hayman, J., against the Catholic Diocese of Lansing and St. Mary's Catholic Church, alleging violations of the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, following the defendants' decision not to renew plaintiff's contract to teach mathematics and religion classes at St. Mary's Elementary School in Mount Morris. The trial court granted defendants' motions for summary disposition of the WPA claim and the CRA claim. Defendants appealed by leave granted with regard to the CRA claim. The Court of Appeals, ZAHRA, P.J., and WHITBECK and BECKERING, JJ., held that the ministerial exception to the application of employment-discrimination and civil rights statutes to religious institutions and their ministerial employees exists in Michigan. The Court of Appeals vacated the order denying summary disposition of the CRA claim and remanded the case to the trial court for an analysis, pursuant to a nonexhaustive list of factors, whether plaintiff was a ministerial employee and conclusions in that regard. 279 Mich App 150 (2008). On remand, the trial court determined that the ministerial exception applied to plaintiff and dismissed the CRA claim. Plaintiff appealed the dismissal of both her WPA claim and her CRA claim.

The Court of Appeals *held*:

1. The trial court did not err by determining that plaintiff's duties were primarily religious in nature. Teaching "secular" classes is not necessarily purely secular in the context of religious schools, particularly in this case where plaintiff stated that she incorporated her religious teachings into her mathematics lessons.

2. All aspects of plaintiff's work had religious significance, including her teaching of religion classes and involvement in planning masses and preparing students for confirmation and reconciliation services.

3. Plaintiff's role in educating and indoctrinating the children as a teacher of religion was important to and furthered the purposes of the church.

4. Although plaintiff did not assume a liturgical role within the entire congregation, she was intimately involved in liturgical planning of worship services, as well as providing confirmation and reconciliation services for students. The trial court did not err by determining that plaintiff was a ministerial employee and that defendants were entitled to summary disposition of the CRA claim under MCR 2.116(C)(4).

5. The WPA claim is also subject to the ministerial exception. The ministerial exception operates to bar any claim the resolution of which would limit a religious institution's right to select who will perform particular spiritual functions. The exception may be applied to WPA claims that involve a religious institution and a ministerial employee.

6. The ministerial exception does not apply to all employment decisions by religious institutions. It applies only to claims involving a religious institution's choice as to who will perform spiritual functions.

7. Termination of the employment of a ministerial employee by a religious institution is an absolutely protected action under the First Amendment, regardless of the reason for doing so. The trial court did not err by dismissing both the CRA claim and the WPA claim.

Affirmed.

1. Constitutional Law — Civil Rights — Ministerial Exception — Whistleblowers' Protection Act.

The "ministerial" exception is a nonstatutory, constitutionally compelled exception to the application of employment-discrimination and civil rights statutes to religious institutions and their ministerial employees; the exception generally bars inquiry into a religious institution's underlying motivation for employment decisions regarding ministerial employees; the exception applies to claims under the Civil Rights Act and the Whistleblowers' Protection Act and operates to bar any claim the resolution of which would limit a religious institution's right to select who will perform particular spiritual functions; the appropriate analysis is the religiously affiliated nature of the institution and the employee's role there, not the particular issues that spring from a termination of employment and the resulting claims (MCL 15.361 et seq., 37.2101 et seq.).

2. Constitutional Law — Civil Rights — Employment Discrimination — Ministerial Exception — Spiritual Functions.

The ministerial exception to the application of employment-discrimination and civil rights statutes to religious institutions

and their ministerial employees does not apply to all employment decisions by religious institutions, nor does it apply to all claims by ministers; it applies only to claims that involve a religious institution's choice as to who will perform spiritual functions; termination of the employment of a ministerial employee by a religious institution is an action absolutely protected under the First Amendment, regardless of the reason for doing so.

*Law Office of Julie A. Gafkay, PLC* (by *Julie A. Gafkay*), and *Joliat, Tosto, McCormick & Bade, PLC* (by *Michael T. Joliat*), for plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *Thomas R. Meagher* and *Liza C. Moore*), for defendants.

Before: METER, P.J., and BORRELLO and SHAPIRO, JJ.

SHAPIRO, J. Plaintiff, a teacher at St. Mary's Elementary School in Mount Morris, filed this action against defendants, alleging violation of the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, after her contract was not renewed for the 2005-2006 school year. In June 2006, the trial court granted defendants' motion for summary disposition of the WPA claim pursuant to MCR 2.116(C)(10). Defendants later moved for summary disposition of the CRA claim under MCR 2.116(C)(4), arguing that the trial court lacked subject-matter jurisdiction over that claim pursuant to the "ministerial exception." The trial court denied that motion. In a prior interlocutory appeal, this Court held that "the ministerial exception exists in Michigan," vacated the order denying the motion, and remanded the case to the trial court "for an analysis of, and conclusions regarding, whether [plaintiff] was a 'ministerial' employee." *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 152; 756 NW2d 483 (2008). On remand, the trial court concluded that the ministe-

rial exception applied to plaintiff and, accordingly, dismissed her CRA claim pursuant to MCR 2.116(C)(4). Plaintiff appeals as of right, challenging the dismissal of both her WPA claim and her CRA claim. We affirm.

## I. BASIC FACTS AND PROCEEDINGS

In *Weishuhn*, 279 Mich App at 153-155, this Court summarized the relevant underlying facts as follows:

### A. WEISHUHN'S BACKGROUND

In 1992, Weishuhn obtained her Bachelor of Science degree in elementary education from the University of Michigan. For more than 10 years, until 1999, Weishuhn worked for St. Charles and Helena Catholic Church in Clio, Michigan. She was that church's director of religious education for its "parish religious ed[ucation] program" for approximately eight years. In 2001, she obtained her master's degree in teaching from Marygrove College.

### B. WEISHUHN'S EMPLOYMENT AND DUTIES AT ST. MARY'S

In August 1999, Weishuhn began teaching at St. Mary's Elementary School in Mount Morris, Michigan. Weishuhn taught mathematics for the fifth through the eighth grades and carried out religious responsibilities that included teaching religion for the sixth through the eighth grades. Initially, Weishuhn taught two mathematics classes and four religion classes each day, but she later taught four mathematics classes and three religion classes each day. And in her final year at St. Mary's (2004-2005), she taught four mathematics classes and two religion classes each day.

At her deposition, Weishuhn explained that her religious-education duties entailed teaching sixth-, seventh-, and eighth-grade religion classes. She was also responsible for planning Masses for those grades, as well as assisting a fourth-grade teacher with student liturgies. Weishuhn and the St. Mary's pastor discussed the subject matter of the Masses. Weishuhn also prepared her seventh-

and eighth-grade students for the sacrament of confirma-
tion, and she developed reconciliation (penance) services
twice a year. At her deposition, Weishuhn agreed that her
responsibilities were ministerial in the sense that she
provided religious direction for her students. She also
testified that religion was an integral part of the school's
curriculum and her lesson plan.

### C. THE PROCEEDINGS BELOW

After a series of employment-related incidents, none of
which involved the subject of religion, St. Mary's terminated
Weishuhn's employment in the spring of 2005. Weishuhn
later filed a two-count complaint against defendants, alleging
violations of the Whistleblowers' Protection Act [MCL 15.361
et seq.] and the Civil Rights Act [MCL 37.2101 et seq.] for
retaliatory termination. Defendants then moved for sum-
mary disposition pursuant to MCR 2.116(C)(10), asserting
that both of Weishuhn's claims failed as a matter of law. The
trial court granted the motion with respect to the Whistle-
blowers' Protection Act claim, but it denied the motion with
respect to the retaliation claim under the Civil Rights Act.

In June 2006, defendants moved for summary disposi-
tion pursuant to MCR 2.116(C)(4), arguing that the trial
court lacked subject-matter jurisdiction over Weishuhn's
employment-discrimination claim because of the ministe-
rial exception. Defendants asserted that "[b]ecause
[Weishuhn's] duties while employed by St. Mary's School
included a 'spiritual function,' the First Amendment of the
United States Constitution precludes application of the
Elliott Larsen Civil Rights Act . . . to [her] employment
relationship with St. Mary's School." The trial court denied
defendants' motion, ruling that there was a question of fact
for the jury in terms of whether Weishuhn's primary
function was spiritual in nature. In reaching its conclusion,
the trial court noted that the caselaw cited by the parties
used the word "primary." The trial court also acknowl-
edged that there appeared to be some overlap between
Weishuhn's duties in terms of secular and spiritual teach-
ing, and opined that "this is a case that maybe could create

some new law in this area, at least maybe get some clarification as to whether or not there needs to be an analysis by the court with respect to this primary or secondary purpose." The trial court gave effect to its ruling in a subsequent written order. The trial court also denied defendants' motion for reconsideration of this matter.

This Court then concluded that the ministerial exception exists in Michigan,[1] vacated the order denying the motion, and remanded the case for further proceedings to determine whether plaintiff was a ministerial employee, explaining:

> The salient question then is whether Weishuhn was a ministerial employee. On the basis of our review de novo, we are unable to determine whether the trial court reached a conclusion on whether Weishuhn was a ministerial employee. The trial court did engage in some discussion about whether Weishuhn's teaching functions were primarily religious in nature. But ultimately the trial court concluded that this was a fact question for the jury and therefore denied defendants' motion for summary disposition.
>
> As we have stated above, this conclusion was erroneous. We recognize, however, that the trial court was acting at a considerable disadvantage because there was no explicit holding that the ministerial exception existed in Michigan and no guidance from Michigan appellate courts regarding how to apply that exception. We therefore remand to the trial court for an analysis of, and conclusions with regard to, whether, in light of this opinion, Weishuhn· was a ministerial employee. In this regard, the trial court shall

---

[1] This Court described the ministerial exception as follows:

The ministerial exception is a nonstatutory, constitutionally compelled exception to the application of employment-discrimination and civil rights statutes to religious institutions and their "ministerial" employees. The ministerial exception has its roots in the Establishment and Free Exercise of Religion clauses of the First Amendment and generally bars inquiry into a religious institution's underlying motivation for a contested employment decision. [*Id.* at 152.]

consider the affidavits, depositions, admissions, or other documentary evidence that the parties have submitted. In undertaking that analysis and reaching these conclusions, the trial court should focus on the totality of Weishuhn's duties and responsibilities, her position, and her functions. More specifically, the trial court should consider the following non-exhaustive list of factors:

(1) Whether Weishuhn had primarily religious *duties* and *responsibilities* in the sense that her primary *duties* consisted of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship;

(2) Whether Weishuhn's *duties* had religious significance;

(3) Whether Weishuhn's *position* was inherently, primarily, or exclusively religious, whether that *position* entailed proselytizing on behalf of defendants, whether that *position* had a connection to defendants' doctrinal mission, and whether that *position* was important to defendants' spiritual and pastoral mission; and

(4) Whether Weishuhn's *functions* were essentially liturgical, that is, related to worship, and whether those *functions* were inextricably intertwined with defendants' religious doctrine in the sense that Weishuhn was intimately involved in the propagation of defendants' doctrine and the observance and conduct of defendants' liturgy by defendants' congregation.

If, after consideration of these factors, the trial court determines that Weishuhn's position and function were such that she was a ministerial employee, then the trial court shall enter an order dismissing Weishuhn's discrimination claim. But if after this inquiry the trial court concludes that Weishuhn was not a ministerial employee, it should schedule further proceedings as necessary for trial. [*Weishuhn*, 279 Mich App at 177-179 (emphasis in original).]

## II. STANDARD OF REVIEW

We review de novo trial court decisions on motions for summary disposition. *Id.* at 155. We also review de

novo the trial court's decision on the ministerial exception because this issue is a question of law. *Id.* at 175-176; *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004). Constitutional issues are also reviewed de novo on appeal. *Weishuhn*, 279 Mich App at 155.

### III. CIVIL RIGHTS ACT CLAIM

With regard to the first factor the trial court was directed to consider, we find no error in the trial court's determination that plaintiff's duties were primarily religious in nature. Plaintiff argues that the trial court ignored evidence that the majority of her classes were mathematics classes. We disagree. Although plaintiff was hired in part to teach mathematics, she also taught religion and she was actively involved in religious planning and activities. She was involved in planning student masses and helped prepare the students for confirmation and reconciliation services. Plaintiff's assertion that "the majority" of her classes were mathematics classes appears to be based solely on the number of classes taught. The argument is erroneous because it fails to consider the amount of classroom time spent on each subject as well as the additional time spent planning masses and preparing students for confirmation and reconciliation services. However, even if we agreed that the total number of classes alone should govern in this case, plaintiff has not shown that the trial court's determination that her duties were primarily religious in nature was erroneous. Plaintiff's argument is based on the premise that teaching mathematics is secular. However, teaching "secular" classes is not necessarily "purely secular" in the context of religious schools. *Coulee Catholic Sch v Labor & Indus Review Comm*, 2009 WI 88, ¶¶ 52-55; 320 Wis 2d 275, 307-309;

768 NW2d 868 (2009). This is particularly true in this case where plaintiff stated that she incorporated her religious teachings into her mathematics lessons. In an interview that plaintiff gave to *The Catholic Times*, she explained that her students

> "hear me talk about God and religion in math class as much as I do in religion class. I'm not the kind of person who separates religion—it's part of who I am and what I teach . . . . My ultimate goal is to help each student develop into a young Christian person who has a conscience." [Lisa Briggs, *Teacher's plan is simple: Lessons for a lifetime*, The Catholic Times, April 30-May 6, 2005, p 8.]

Therefore, we find no error in the trial court's conclusion that plaintiff's duties were primarily religious, notwithstanding the fact that she taught four mathematics and two religion classes in her last year of teaching.

With regard to the second factor, plaintiff's teaching of religion classes and her involvement in planning masses and preparing students for confirmation and reconciliation services clearly have religious significance. Further, plaintiff's admission that she incorporated her religious teachings into her mathematics classes indicates all aspects of her work had religious significance. Thus, we agree with the trial court that this factor also weighs in favor of finding that plaintiff was a ministerial employee.

In its analysis of the third factor, the trial court found that plaintiff's position was primarily religious because, as a teacher of religion, she was involved in proselytizing on behalf of the church. We agree. As the trial court noted, educating and indoctrinating the children was important to and furthered the purposes of the church. Thus, plaintiff's involvement in planning masses and preparing students for confirmation and reconciliation

services were connected to defendants' doctrinal mission, and these activities were important to defendants' spiritual and pastoral mission. Moreover, plaintiff admitted in her interview with *The Catholic Times* that even in her math classes, she did not separate religion and that it was part of her mission to promote and reinforce Christian ideals.

The fourth factor presents a closer question, given that plaintiff did not assume a liturgical role within the entire congregation. Still, she was intimately involved in liturgical planning of worship services, as well as confirmation and reconciliation services, for students. Further, her role as a religion teacher involved propagation of defendants' doctrine to students, which included guidance in worship services and rituals.

We conclude that, in light of this record, the trial court did not err by determining that consideration of the foregoing factors established that plaintiff was a ministerial employee.

Plaintiff argues that the facts in this case more closely resemble those in cases cited in *Weishuhn* that found the ministerial exception did not apply to teachers. This argument misconstrues the Court's discussion of those opinions in *Weishuhn*. This Court cited cases such as *Redhead v Conference of Seventh-Day Adventists*, 440 F Supp 2d 211, 220-222 (ED NY, 2006), and *Guinan v Roman Catholic Archdiocese of Indianapolis*, 42 F Supp 2d 849, 853 (SD Ind, 1998), and noted that these courts "have ruled that the ministerial exception did not apply to teachers." *Weishuhn*, 279 Mich App at 164-165. However, this Court also reviewed cases in which the contrary view was followed. *Id.* at 163-164. The Court ruled that the ministerial exception *could* apply to the plaintiff depending upon the documentary evidence, *id.* at 178-179, and rejected the position that

the ministerial exception is inapplicable to teachers. Instead, the Court opted for a broader totality of the circumstances test. *Id.* To the extent that plaintiff is requesting we reconsider that determination, we must decline. Under the law of the case, we are bound by *Weishuhn. Sinicropi v Mazurek*, 279 Mich App 455, 465; 760 NW2d 520 (2008).

For these reasons, the trial court did not err by finding that plaintiff was a ministerial employee and that defendants were therefore entitled to summary disposition of plaintiff's CRA claim pursuant to MCR 2.116(C)(4).

### IV. WHISTLEBLOWERS' PROTECTION ACT CLAIM

Plaintiff also challenges the trial court's determination that she failed to establish a genuine issue of material fact with respect to her WPA claim, thereby entitling defendants to summary disposition of that claim under MCR 2.116(C)(10). We find it unnecessary to decide whether dismissal of plaintiff's WPA claim was proper under MCR 2.116(C)(10) because we agree with defendants that the WPA claim is also subject to the ministerial exception.

Michigan courts have not yet addressed the applicability of the ministerial exception to WPA claims. The ministerial exception is rooted in the First Amendment and, thus, generally takes precedence over statutorily based claims. As explained in *Weishuhn,* 279 Mich App at 152, it is a "constitutionally compelled exception to the application of employment-discrimination and civil rights statutes to religious institutions and their 'ministerial' employees." Although the CRA and the WPA are distinct acts, they have as a common purpose the prevention of discrimination in employment on the basis of statutorily recognized factors rooted in public

policy. Indeed, the Michigan Supreme Court has held that " '[w]histleblower statute[s] [are] analogous to antiretaliation provisions of other employment discrimination statutes' " and " 'the policies underlying these similar statutes warrant parallel treatment . . . .' " *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 617; 566 NW2d 571 (1997), quoting *Rouse v Farmer's State Bank of Jewell, Iowa*, 866 F Supp 1191, 1204 (NE Iowa, 1994). Thus, the rationale for recognizing the existence of the ministerial exception to a claim under the CRA seems to apply equally to a claim under the WPA.

Although we located no federal cases specifically involving "whistleblower" claims, there have been several involving Title VII of the Civil Rights Act, as amended, 42 USC 2000e to 2000e-17 (Title VII), all of which have concluded that the ministerial exception applies.

In *Gellington v Christian Methodist Episcopal Church*, 203 F3d 1299 (CA 11, 2000), the plaintiff was an ordained minister who alleged that he was retaliated against and constructively discharged by the defendant in violation of Title VII. *Id.* at 1300. The United States Court of Appeals for the Eleventh Circuit upheld the district court's grant of summary disposition, concluding that the ministerial exception applied to the claim. *Id.* at 1301. The court noted that "applying Title VII to the employment relationship between a church and its clergy would involve 'excessive government entanglement with religion' as prohibited by the Establishment Clause of the First Amendment" because "[a] church's view on whether an individual is suited for a particular clergy position cannot be replaced by the courts' without entangling the government in questions of religious doctrine, polity, and practice." *Id.* at 1304 (quotation marks and citation omitted).

In *Elvig v Calvin Presbyterian Church*, 375 F3d 951, 965 (CA 9, 2004), the plaintiff alleged that while serving as the associate pastor for defendant, the lead pastor "engaged in sexually harassing and intimidating conduct toward her, creating a hostile working environment" and that when she made a formal complaint, filed a claim of discrimination with the EEOC and received her right-to-sue letter, she was placed on unpaid leave and subsequently her employment was terminated. *Id.* at 953. The plaintiff had "alleged five retaliatory adverse employment actions: (1) the removal of certain duties, (2) her suspension, (3) her termination, (4) the refusal to permit the circulation of her personal information form and (5) retaliatory harassment in the form of verbal abuse and intimidation." *Id.* at 965. The United States Court of Appeals for the Ninth Circuit noted that "the first four of these actions are protected ministerial decisions" because "[a] church's selection of its ministers is unfettered, and its true reasons—whatever they may be—are therefore unassailable." *Id.* at 961, 965. Simply put, "the [c]hurch cannot be required to articulate a justification for its ministerial decisions . . . ." *Id.* at 961-962. On the basis of these holdings, the Ninth Circuit upheld the dismissal of the plaintiff's retaliation claims.[2] *Id.* at 969. The Ninth Circuit also ordered the district court to consider the plaintiff's state law claims, but noted that " '[j]ust as there is a ministerial exception to Title VII, there must also be a ministerial exception to any state law cause of action that would otherwise impinge on the

---

[2] The Ninth Circuit did hold that the plaintiff's sexual harassment claim and the retaliation claim (predicated on retaliatory harassment) survived, but that the "protected ministerial decisions—the removal of certain duties, her suspension, her termination and the refusal to permit the circulation of her personal information form" could not be bases of liability for those claims. *Elvig*, 375 F3d at 969.

church's prerogative to choose its ministers or to exercise its religious beliefs in the context of employing its ministers.' " *Id.*, quoting *Bollard v California Province of the Society of Jesus*, 196 F3d 940, 950 (CA 9, 1999).

In *Petruska v Gannon Univ*, 462 F3d 294 (CA 3, 2006), the plaintiff was a chaplain working for a private Catholic university. *Id.* at 299-300. The plaintiff claimed that on the basis of her opposition to sexual harassment and her gender, the university retaliated by restructuring itself in a manner that constructively discharged her. *Id.* at 300-302. The United States Court of Appeals for the Third Circuit concluded that "the First Amendment protects [the university's] right to restructure— regardless of its reason for doing so" because the "choice to restructure constituted a decision about who would perform spiritual functions and about how those functions would be divided" and dismissed the plaintiff's Title VII claims, as well as her state law claims for civil conspiracy and negligent supervision and retention. *Id.* at 307-308, 309.

At least one state has explicitly applied the ministerial exception to state whistleblower claims. In *Archdiocese of Miami, Inc v Minagorri*, 954 So 2d 640 (Fla App, 2007),[3] the Florida Court of Appeals considered a whistleblower claim brought by a principal of a Catholic school, who alleged that when she complained to the archdiocese about her supervisor's assaulting and battering her, the archdiocese retaliated by firing her. *Id.* at 641. The court noted that the ministerial exception had been applied to claims under the Americans with Dis-

---

[3] Although this is a Florida Court of Appeals decision, the Florida Supreme Court, although originally granting leave, indicated the review was improvidently granted, *Minagorri v Archdiocese of Miami, Inc*, 985 So 2d 1086 (Fla, 2008), and the United States Supreme Court denied review, *Minagorri v Archdiocese of Miami, Inc*, 555 US 1102; 129 S Ct 936; 173 L Ed 2d 113; (2009).

abilities Act, 42 USC 12101 *et seq.*, the Age Discrimination in Employment Act, 29 USC 621 *et seq.*, and common-law claims brought against religious employers, and held "[w]e see no reason why the ministerial exception should not be applied to the instant whistleblower claim." *Id.* at 643.

Thus, the general consensus is that "[t]he ministerial exception, as we conceive of it, operates to bar any claim, the resolution of which would limit a religious institution's right to select who will perform particular spiritual functions." *Petruska*, 462 F3d at 307; see also *Hartwig v Albertus Magnus College*, 93 F Supp 2d 200, 211 n 13 (D Conn, 2000) (the appropriate analysis is the religiously affiliated nature of the institution and the employee's role there, "not the particular issues which spring from the termination of his employment relationship and the resulting claims"). We agree with this approach and adopt it as our position. Accordingly, we hold that the ministerial exception may be applied to WPA claims that involve a religious institution and a ministerial employee.

We recognize that it seems unjust that employees of religious institutions can be fired without recourse for reporting illegal activities, particularly given that members of the clergy, as well as teachers, are mandated reporters. MCL 722.623(1)(a). However, to conclude otherwise would result in pervasive violations of First Amendment protections.[4]

---

[4] Although we recognize the unfairness of the position, we lack the power to alter the legislative reporting requirements and the Legislature cannot trump the United States Constitution. Our ruling does not reduce or immunize statutory reporters who are ministerial employees of religious institutions from the consequences if they fail to meet their mandatory reporting duties because they fear retaliation for which there would be no civil recourse.

We are mindful of the potential for abuse our holding theoretically may invite; namely, the use of the First Amendment as a pretextual shield to protect otherwise prohibited employment decisions. But we think that saving grace lies in the recognition that courts consistently have subjected personnel decisions of various religious organizations to statutory scrutiny where the duties of the employees were not of a religious nature. We have confidence that courts will continue to consider these situations on a case-by-case basis, looking in each case to see whether the plaintiff's employment discrimination claim can be adjudicated without entangling the court in matters of religion. [*Scharon v St Luke's Episcopal Presbyterian Hosps*, 929 F2d 360, 363 n 3 (CA 8, 1991) (citations omitted).]

Furthermore, we agree with the Third Circuit that the ministerial exception

does not apply to *all* employment decisions by religious institutions, nor does it apply to *all* claims by ministers. It applies only to claims involving a religious institution's choice as to who will perform spiritual functions. [*Petruska*, 462 F3d at 305-306 n 8.]

Thus, some claims by ministerial employees are not necessarily foreclosed by the ministerial exception. For example, certain "independent" tort and contract actions have survived, see *Petruska*, 462 F3d at 310-311 (holding that a negligent misrepresentation claim was unaffected by the ministerial exception because its resolution "does not turn on the lawfulness of the decision to restructure, but rather upon the truth or falsity of the assurances that she would be evaluated on her merits" and that the breach of contract claim could also move forward because enforcement "in no way constitutes a state-imposed limit upon a church's free exercise rights," although it would be subject to an evaluation of whether resolution "required inquiry into the church's ecclesiastical policy"); *Elvig*, 375 F3d at

965 (holding that "retaliatory harassment in the form of verbal abuse and intimidation" was not a protected employment decision and, therefore, the plaintiff's retaliatory harassment claim was not barred by the application of the ministerial exception), as well as claims where the termination decision is made by a nonreligious entity, see *Maruani v AER Servs, Inc*, unpublished memorandum opinion of the United States District Court for the District of Minnesota, issued September 18, 2006 (Docket No. 06-176) (holding that the plaintiff's whistleblower claim could proceed because "the Court can envision a situation wherein [the plaintiff] could contend that the rabbis' determination did not in fact motivate [the nonreligious entity employer] to take the adverse employment action without challenging the validity, existence or plausibility of the religious doctrine itself").

However, none of these exceptions apply to the present case because plaintiff's WPA claim alleges retaliation by termination of employment. Termination of a ministerial employee by a religious institution is an absolutely protected action under the First Amendment, regardless of the reason for doing so. *Petruska*, 462 F3d at 307, 309; *Elvig*, 375 F3d at 961. In light of our affirmance of the trial court's conclusion that plaintiff was a ministerial employee, the trial court properly granted summary disposition as to plaintiff's WPA claim, albeit for the wrong reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

Affirmed.