# FOR PUBLICATION

APPELLANT PRO SE:

**STEVEN A. BALLABAN**
Bloomington, Indiana

ATTORNEYS FOR APPELLEES:

**GEOFFREY M. GRODNER**
**JENNIFER M. ROMANIUK**
**JARED S. SUNDAY**
Mallor Grodner LLP
Bloomington, Indiana

**FILED**
Jan 17 2013, 8:41 am
**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN A. BALLABAN | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1207-CT-315 |
| | ) | |
| BLOOMINGTON JEWISH | ) | |
| COMMUNITY, INC., a/k/a | ) | |
| CONGREGATION BETH SHALOM, | ) | |
| PAUL EISENBERG, Individually and | ) | |
| as President, JUDITH ROSE, Individually | ) | |
| and as Vice President, SARAH | ) | |
| WASSERMAN, Individually and as | ) | |
| Treasurer, LYNNE FOSTER SHIFRISS, | ) | |
| Individually and as Past President, and | ) | |
| ROBERTA "DIDI" KERLER, Individually | ) | |
| and as Director of Gan Shalom, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable E. Michael Hoff, Judge
Cause No. 53C01-1105-CT-977

**January 17, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Steven A. Ballaban, *pro se*, appeals the trial court's denial of his motion to correct error and the court's summary judgment ruling in favor of Bloomington Jewish Community, Inc., a/k/a Congregation Beth Shalom ("Beth Shalom"), Paul Eisenberg, Judith Rose, Sarah Wasserman, Lynne Foster Shifriss, and Roberta "Didi" Kerler (collectively, Appellees). Ballaban raises one issue, which we revise and restate as whether the court abused its discretion in denying his motion to correct error or erred in granting summary judgment in favor of Appellees. Appellees request appellate attorney fees pursuant to Ind. Appellate Rule 66(E). We affirm and deny Appellees' request for attorney fees.

FACTS AND PROCEDURAL HISTORY

Ballaban entered into an employment agreement with Beth Shalom, a religious institution organized under the laws of the State of Indiana with a congregation comprised of members of the Jewish faith, which was effective July 1, 2009, pursuant to which Ballaban would serve as rabbi for Beth Shalom for three years. Pursuant to the employment agreement, Ballaban and Beth Shalom agreed that the relationship would be guided according to the Guidelines for Rabbinical-Congregational Relationships (the "Guidelines").

In early 2010, Ballaban received information regarding possible improper conduct by a teacher. According to e-mail messages contained in Ballaban's appellant's supplemental appendix, the improper conduct reported to Ballaban by a congregation member consisted of a teacher massaging the backs, chest, and stomach area of children

2

under their clothing. Ballaban exchanged e-mail messages with several individuals regarding the potential concern.

Beth Shalom terminated Ballaban's employment with compensation through May 18, 2010. Beth Shalom, by its President Paul Eisenberg, provided a letter to Ballaban indicating the reasons for the decision of the Board of Directors of Beth Shalom, including the Board's view that Ballaban was unable or unwilling to fulfill the expectations for rabbinic behavior, that Ballaban knowingly and intentionally placed the tax exempt status of Beth Shalom at risk by accepting a donation intended for a single recipient to whom the donor was related and assuring the donor that the gift would be tax deductible, that Ballaban breached the Guidelines' sacred duty of confidence on at least two occasions by forwarding e-mail messages from members of the congregation and his responses to members of the Personnel Committee, and that the Board had received complaints concerning Ballaban's conduct including angry outbursts and generally hostile behavior which in part had led Beth Shalom to face the resignation of employees who were unable to work peacefully with Ballaban.

Ballaban filed a complaint against Appellees on May 23, 2011, and an amended complaint on August 24, 2011.[1] On April 13, 2012, Appellees filed a motion for summary judgment together with a designation of evidence and a memorandum in support of the motion. In the memorandum, Appellees argued that the congregation expected Ballaban, as its spiritual leader, to serve as a role model by abiding by the highest moral values and exemplifying the ideals of the Jewish faith, that difficulties

---

[1] The complaints are not included in the record.

surfaced within a few months, that congregational leaders counseled Ballaban on issues related to financial impropriety, breaches of rabbi-congregant confidentiality, and instances of angry and intimidating interactions with Beth Shalom employees and congregants, and that when it became apparent that Ballaban was unable to fulfill Beth Shalom's expectations for rabbinic behavior, it terminated his employment as rabbi. Appellees further argued that the Free Exercise and Establishment Clauses of the First Amendment protect Beth Shalom's right to choose who will personify its beliefs and minister to its faithful and prohibit judicial intervention in Ballaban's claims, that both the United States Supreme Court and the Indiana courts have applied a "ministerial exception" to preclude government interference with the employment relationships between religious institutions and their ministers, that Ballaban's contract included a section in which the parties agreed to be bound by guidelines sanctioned by a governing body within the Jewish religion, and that to resolve Ballaban's breach of contract claim, the court would not only be required to examine Beth Shalom's internal governance but also to interpret and apply its Guidelines. Appellees also argued that Ballaban's claims for negligent failure to supervise, defamation, and invasion of privacy cannot be resolved without excessive entanglement in church doctrine and must be dismissed.

On April 16, 2012, Ballaban filed a response and designation of evidence in opposition to Appellees' summary judgment motion.[2]  From May 7, 2012 to June 4, 2012, Ballaban filed a supplemental response, a supplemental memorandum, and several

---

[2] A copy of the response was not included in the record. However, Ballaban's appellant's supplemental appendix includes several documents identified as his designation of materials relied upon in support of his opposition to the motion for summary judgment.

4

supplemental designations of evidence. The documents in the appellant's supplemental appendix filed by Ballaban and identified as his designation of materials include copies of e-mail messages between Ballaban and others regarding in part possible concerns related to the alleged actions of a teacher with children and the response of Beth Shalom and its Board to the concerns. The documents identified as Ballaban's supplemental responses include a form investigation report from the Indiana Department of Child Services ("DCS") dated August 3, 2010 indicating that an allegation of child molesting had been made and that DCS had concluded that the abuse allegations were unsubstantiated. The supplemental responses also included an affidavit of the records custodian of the Bloomington Police Department indicating that no case reports or calls for service were found regarding any investigation of child abuse. On May 17, 2012, Appellees filed a reply in support of its summary judgment motion arguing that the ministerial exception applies to Ballaban's claims.

On June 5, 2012, the trial court held a hearing on Appellees' motion for summary judgment, at which Appellees appeared by counsel and Ballaban appeared *pro se*, and the court heard arguments on the motion and took the matter under advisement.[3] On June 19, 2012, the court entered an eight-page order granting Appellees' motion for summary judgment. In the order, the court stated that "the crux of this case is whether or not this court can compel [Beth Shalom] to retain [Ballaban] as their rabbi, or pay damages to him if it does not." Appellees' Appendix at 22. The court noted that the United States Supreme Court recently found that its decisions "confirm that it is impermissible for the

---

[3] A transcript of the hearing was not prepared or included in the record.

5

government to contradict a church's determination of who can act as its ministers" and "both *Religion Clauses* [of the First Amendment] bar the government from interfering with the decision of a religious group to fire one of its ministers." Id. (citing Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC, 132 S. Ct. 694, 702, 704 (2012)) (emphasis in original). The court further noted that the Indiana Supreme Court and this court have held that the ministerial exception applies to breach of contract cases unless purely secular issues are involved. Id. The court stated that "[a]pparently recognizing that his claims against Beth Shalom are barred by the principles of church-state separation, [Ballaban] claims that Beth Shalom fired him in retaliation for reporting child abuse" and that "the court should adjudicate [his] claim that he was dismissed for [an] improper purpose." Id. at 23. The court found that "it seems likely that Indiana law would prohibit a discharge in retaliation for reporting child abuse" but that Ballaban "has not designated admissible evidence from which the court could conclude that child abuse occurred, or that [Ballaban] reported child abuse" to DCS. Id. The court concluded that "[a]ssuming that there is an exception for a minister discharged for reporting child abuse, [Ballaban] has failed to designate any evidence that would create such an exception in this case" and that Appellees were entitled to summary judgment on Ballaban's claims. Id. at 24.

Ballaban filed a motion to correct error in which he argued that the trial court had improperly interpreted the child abuse reporting statutes found at Ind. Code §§ 31-33-5 and -6 and the evidence presented. The court denied Ballaban's motion to correct error.

## ISSUE AND STANDARD OF REVIEW

The issue is whether the trial court abused its discretion in denying Ballaban's motion to correct error or erred in granting summary judgment in favor of Appellees and against Ballaban.

We note that although Ballaban is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. This court will not "indulge in any benevolent presumptions on [their] behalf, or waive any rule for the orderly and proper conduct of [their] appeal." Ankeny v. Governor of State of Ind., 916 N.E.2d 678, 679 n.1 (Ind. Ct. App. 2009) (citation omitted), reh'g denied, trans. denied.

Generally, we review rulings on motions to correct error for an abuse of discretion. Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008), reh'g denied. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied.

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment

7

motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

## DISCUSSION

Ballaban contends that the trial court erred in granting summary judgment in favor of Appellees. Specifically, Ballaban argues that Ind. Code §§ 31-33-6 grants civil immunity to any individual who makes a report of child abuse and does not restrict immunity to those who make a report to DCS. Ballaban argues that he designated evidence that he made a report as required by Ind. Code § 31-33-5-1 in the manner specified in Ind. Code § 31-33-5-2 and that, absent a finding that he acted with malice or with bad intent in making his report, he is entitled to civil immunity as defined in Ind. Code § 31-33-6-1. He asserts that he has demonstrated he made the mandated report under Indiana statutes, that those statutes do not require that all reports must be made solely to DCS or that DCS must make an affirmative determination of abuse or neglect in order for Ballaban to be protected by the guarantee of civil immunity, that thus he is

8

protected by the grant of civil immunity, and that the ruling of the trial court granting summary judgment in favor of Appellees should be reversed.

Appellees maintain that the trial court properly dismissed Ballaban's claims pursuant to the ministerial exception and that the court's decision is consistent with the Free Exercise Clause of the First Amendment. Specifically, Appellees argue that the court found that the ministerial exception prohibited the court from interfering in Beth Shalom's decision to terminate Ballaban's employment as rabbi, that Ballaban declined to address the ministerial exception in his brief and instead appears to request this court to create an exception to the ministerial exception based upon the theory that Beth Shalom terminated his employment in retaliation for refusing to cover up child abuse, and that Ballaban did not designate any evidence in support of his theory. Appellees argue that the court cannot rule upon the validity of Ballaban's breach of contract claim without excessive entanglement in internal church governance, that this is precisely the type of inquiry prohibited by the First Amendment and <u>Hosanna-Tabor</u>, 132 S. Ct. 694, and that, while <u>Hosanna-Tabor</u> was expressly limited to employment discrimination suits, Indiana courts have applied the ministerial exception broadly to dismiss breach of contract claims against religious institutions. Appellees further maintain that the court properly declined to create a retaliation exception to the ministerial exception, that there is no evidence in the trial or appellate record that compels the creation of a retaliation exception, or if such an exception existed, supports applying it here, that Ballaban's assertions of retaliation are a red herring designed to distract the court from the fact that he has no argument refuting the ministerial exception, that Ballaban failed to show he reported abuse and thus

9

there is no basis to create the retaliation exception Ballaban seeks, and that other jurisdictions have declined to create the exception. Appellees also argue that Ballaban's procedural noncompliance with the Indiana Rules of Appellate Procedure effectively waives his arguments on appeal and that Ballaban's disregard of the requirements of the Indiana Rules of Appellate Procedure constitutes procedural bad faith and entitles Appellees to damages pursuant to Ind. Appellate Rule 66(E).

In his reply brief, Ballaban argues that the behavior described in the e-mail messages in his supplemental appendix clearly falls within the conduct outlined in the Indiana mandatory child abuse reporting statutes and that no Indiana court has interpreted those statutes to mean that clergy and/or employees of religious institutions are exempt from the reporting responsibility, or that being held to account for failing to report represents excessive entanglement. Ballaban further argues that he did not waive his arguments on appeal, did not act in bad faith, and that Appellees are not entitled to damages.

While we decline to find that Ballaban's failure to submit an appendix and deficiencies in his appellant's brief result in waiver of all of Ballaban's arguments, see Appellate Rule 49(B) ("Any party's failure to include any item in an Appendix shall not waive any issue or argument."), we find that, to the extent Ballaban fails to cite to relevant authority or relevant portions of the record or develop an argument with respect to the issues he attempts to raise or fails to develop an argument or point to designated evidence before the trial court to support the allegations he attempted to set forth in his motion to correct error, those arguments on appeal are waived. See Loomis v. Ameritech

10

<u>Corp.</u>, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to cite authority or provide cogent argument), <u>reh'g</u> <u>denied</u>, <u>trans.</u> <u>denied</u>.

A.      <u>Summary Judgment Ruling</u>

With respect to the parties' arguments regarding the trial court's summary judgment ruling, we note that Ballaban does not argue on appeal that the reasons provided by Beth Shalom for terminating his employment constituted improper bases to do so. Instead, Ballaban's sole argument is, in essence, that Appellees are not entitled to summary judgment because Beth Shalom terminated his employment in retaliation for his actions of making a report related to possible child abuse pursuant to the reporting statutes found at Ind. Code §§ 31-33-5.

Ind. Code § 31-33-5-1 provides that "an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article." Ind. Code § 31-33-5-2(a) provides in part that "[i]f an individual is required to make a report under this article in the individual's capacity as a member of the staff of a medical or other public or private institution, school, facility, or agency, the individual shall immediately notify the individual in charge of the institution, school, facility, or agency or the designated agent of the individual in charge of the institution, school, facility, or agency."[4]

---

[4] In addition, Ind. Code § 31-33-5-3 provides that "[t]his chapter does not relieve an individual of the obligation to report on the individual's own behalf, unless a report has already been made to the best of the individual's belief." Ind. Code § 31-33-5-4 provides that "[a] person who has a duty under this chapter to report that a child may be a victim of child abuse or neglect shall immediately make an oral report to [] the department; or [] the local law enforcement agency."

11

Ind. Code § 31-33-6-1 provides: "Except as provided in section 2 of this chapter, a person, other than a person accused of child abuse or neglect, who: [] makes or causes to be made a report of a child who may be a victim of child abuse or neglect; . . . [or] makes any other report of a child who may be a victim of child abuse and neglect . . . is immune from any civil or criminal liability that might otherwise be imposed because of such actions." Ind. Code § 31-33-6-2 provides that "[i]mmunity does not attach for a person who has acted maliciously or in bad faith." Ind. Code § 31-33-6-3 provides that "[a] person making a report that a child may be a victim of child abuse or neglect or assisting in any requirement of this article is presumed to have acted in good faith."

To the extent that Appellees argue that the trial court's ruling should be affirmed on the basis that the ministerial exception is applicable in this case, we note that the "ministerial exception" is rooted in the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution. The Free Exercise Clause prohibits governmental action that "encroaches upon the ability of a church to manage its internal affairs," and the Establishment Clause prohibits "excessive entanglement" between government and religion. Prince of Peace Lutheran Church v. Linklater, 28 A.3d 1171, 1182-1183 (Md. 2011) (citations omitted).

This court has previously found the ministerial exception to be applicable under certain circumstances where allegations would require courts to interfere or become excessively entangled in religious affairs in violation of the First Amendment. See Ind. Area Found. of United Methodist Church, Inc. v. Snyder, 953 N.E.2d 1174, 1180-1182 (Ind. Ct. App. 2011) (holding that the ministerial exception applied to a minister's

12

defamation and breach of contract claims); <u>McEnroy v. St. Meinrad Sch. of Theology</u>, 713 N.E.2d 334, 337 (Ind. Ct. App. 1999) (noting that the appellant's claims including breach of contract and tortious interference with contractual relations would require the trial court to interpret and apply religious doctrine and ecclesiastical law and that the court "would be clearly and excessively entangled in religious affairs in violation of the First Amendment" and holding therefore that the court did not err in dismissing the claims), <u>trans.</u> <u>denied</u>.

There are numerous opinions from state and federal courts applying the ministerial exception under various contexts and circumstances and to various types of claims, some of which appear to take a relatively expansive view of the principle and others which appear to take a more limited view. <u>See</u> <u>Bilbrey v. Myers</u>, 91 So.3d 887, 891 (Fla. Ct. App. 2012) (noting that "[s]ome state and federal courts have taken an expansive view of the protections afforded by the doctrine and refuse to adjudicate most tort claims against religious institutions, finding such claims barred because the conduct giving rise to the claim is inextricably entangled with church polity and administration," citing <u>Snyder</u>, 953 N.E.2d 1174, and that "[m]ost courts, however, have adopted a narrower view of the doctrine and hold that the rights guaranteed by the First Amendment are not violated if the tort claims can be resolved through the application of 'neutral principles' of tort law, particularly where there is no allegation that the conduct in question was part of a sincerely held religious belief or practice"); <u>see</u> <u>also</u> <u>Weishuhn v. Lansing Catholic Diocese</u>, 787 N.W.2d 513, 519-521 (Mich. Ct. App. 2010) (affirming the dismissal of a plaintiff's claim under the State's whistleblowers' protection act on the basis that the

13

claim was subject to the ministerial exception),[5] appeal denied, 87 N.W.2d 507 (Mich. 2010), cert. denied, 132 S. Ct. 1088 (2012); Archdiocese of Miami, Inc. v. Minagorri, 954 So.2d 640 (Fla. Ct. App. 2007) (holding that the ministerial exception applied to a whistleblower claim), reh'g denied, cert. denied by 555 U.S. 1102, 129 S. Ct. 936 (2009); Linklater, 28 A.3d at 1183 (noting that "[a]lthough some federal appellate courts have applied the ministerial exception broadly, we agree with the []analysis by the United States Court of Appeals for the Ninth Circuit [that] [t]he First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships . . . and therefore hold that the ministerial exception does not operate to bar every claim of sexual harassment asserted against church officials by a former ministerial employee") (internal quotations, citations, and footnote omitted); Hoatson v. N.Y. Archdiocese, 901 N.Y.S.2d 907 (N.Y. Sup. Ct. 2009) ("[T]his action is not a religious

---

[5] In Weishuhn, where an employee was discharged "[a]fter a series of employment-related incidents, none of which involved the subject of religion," 787 N.W.2d at 516, the court made the following comments:

> We recognize that it seems unjust that employees of religious institutions can be fired without recourse for reporting illegal activities, particularly given that members of the clergy, as well as teachers, are mandated reporters [under the State's whistleblowers' protection act]. However, to conclude otherwise would result in pervasive violations of First Amendment protections.

Id. at 521. The court also stated:

> Although we recognize the unfairness of the position, we lack the power to alter the legislative reporting requirements and the Legislature cannot trump the United States Constitution. Our ruling does not reduce or immunize statutory reporters who are ministerial employees of religious institutions from the consequences if they fail to meet their mandatory reporting duties because they fear retaliation for which there would be no civil recourse.

Id. at 521 n.4.

controversy, in the sense that the Court is not asked to resolve a disagreement between parties about differing religious doctrines or beliefs. Plaintiff's theories of recovery are based on secular principles of law, not religious doctrinal matters.")

The United States Supreme Court, in its recent opinion in Hosanna-Tabor addressing whether the freedom of a religious organization to select its ministers is implicated by a suit alleging discrimination in employment, held:

> We agree that there is such a ministerial exception. The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

132 S. Ct. at 705-706. The Court held that the First Amendment required dismissal of the employment discrimination suit against the religious employer. Id. at 707-709. The Court also commented:

> The [Equal Employment Opportunity Commission ("EEOC")] and Perich[, the respondent teacher whose employment was terminated,] foresee a parade of horribles that will follow our recognition of a ministerial exception to employment discrimination suits. According to the EEOC and Perich, such an exception could protect religious organizations from liability for retaliating against employees for reporting criminal misconduct or for testifying before a grand jury or in a criminal trial. . . .
>
> Hosanna-Tabor responds that the ministerial exception would not in any way bar criminal prosecutions for interfering with law enforcement investigations or other proceedings. . . .

15

The case before us is an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. Today we hold only that the ministerial exception bars such a suit. *We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers. There will be time enough to address the applicability of the exception to other circumstances if and when they arise.*

Id. at 710 (emphasis added).

According to Brad Turner, *It's My Church And I Can Retaliate If I Want To: Hosanna-Tabor And The Future Of The Ministerial Exception*, at oral argument in Hosanna-Tabor, Justice Sotomayor "offer[ed] a hypothetical: what about a teacher who is fired by a religious employer for reporting sexual abuse to the government?" and "[c]ounsel for Hosanna-Tabor reluctantly responded that should a case like that arise, it would be appropriate for the Court to carve out a child-abuse reporting exception to the ministerial exception." 7 DUKE J. CONST. L. & PUB. POL'Y SIDEBAR 21, 38-39 (2011) (citing Transcript of Oral Argument in Hosanna-Tabor).[6]

On the record and facts before us, it may not appear that an allegation that Ballaban was terminated in retaliation for reporting child abuse as required by Indiana law would necessarily require governmental meddling with any religious tenets. On the other hand, a more expansive view of the ministerial exception may prevent the courts from hearing such a claim. Further, we note that Ballaban's complaint and amended complaint are not before us,[7] Ballaban does not indicate whether he seeks reinstatement

---

[6] The journal article was published prior to the Court's opinion in Hosanna-Tabor. The Court's opinion did not expressly address any carve out for a child-abuse reporting exception except to the extent that it recited the argument of the EEOC and Perich as noted above.

[7] In their memorandum in support of their motion for summary judgment, Appellees presented arguments in response to claims for negligent failure to supervise, defamation, and invasion of privacy.

16

or other relief, and it is unclear from the record whether resolution of the specific claims Ballaban presented could be resolved without excessive entanglement in religious affairs.[8]

The United States Supreme Court has not determined the applicability of the ministerial exception where a minister's employment was terminated or otherwise impacted for reporting or attempting to report child abuse or neglect, and under the facts of this case it is not necessary that we make that determination because there are other grounds in the record supporting the trial court's ruling to which the ministerial exception applies. We note that the designated evidence reveals there were a number of reasons cited by Beth Shalom in support of its decision to terminate Ballaban's employment as a minister. Specifically, the letter from Beth Shalom to Ballaban outlining the reasons for its decision to terminate Ballaban's employment states that Ballaban was unable or unwilling to fulfill the expectations for rabbinic behavior, that Ballaban knowingly and intentionally placed the tax exempt status of Beth Shalom at risk in accepting a donation intended for a single recipient and assuring the donor that the gift would be tax deductible, and that the Board had received complaints concerning Ballaban's conduct of

---

[8] The Court in Hosanna-Tabor also stated:

> The EEOC and Perich suggest that Hosanna-Tabor's asserted religious reason for firing Perich—that she violated the Synod's commitment to internal dispute resolution—was pretextual. That suggestion misses the point of the ministerial exception. The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful—a matter "strictly ecclesiastical"—is the church's alone.

Hosanna-Tabor, 132 S.Ct. at 709 (citation omitted). These comments appear to suggest that a court may not order a religious employer to reinstate a minister whose employment has been terminated.

angry outbursts and hostile behavior. Ballaban does not challenge on appeal the termination of his employment on these grounds.

Based upon the record, we conclude that the trial court did not err in entering summary judgment in favor of Appellees and against Ballaban or abuse its discretion in denying Ballaban's motion to correct error.

B.     Request for Attorney Fees

We next turn to Appellees' request for appellate attorney fees pursuant to Appellate Rule 66(E). Appellate Rule 66(E) provides in part that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorneys' fees under Ind. Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003) (citing Orr v. Turco Mfg. Co., Inc., 512 N.E.2d 151, 152 (Ind. 1987)). In addition, while Ind. Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. Id. (citing Tioga Pines Living Ctr., Inc. v. Ind. Family & Social Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), affirmed on reh'g, trans. denied). A strong showing is required to justify an award of appellate damages and the sanction is not imposed to punish mere lack of merit but something more egregious. Harness v. Schmitt, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010).

Indiana appellate courts have classified claims for appellate attorneys' fees into substantive and procedural bad faith claims. Thacker, 797 N.E.2d at 346 (citing Boczar v. Meridian St. Found., 749 N.E.2d 87, 95 (Ind. Ct. App. 2001)). To prevail on a substantive bad faith claim, the party must show that "the appellant's contentions and arguments are utterly devoid of all plausibility." Id. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Id. at 346-347. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. Id. at 347.

Appellees argue that "Ballaban's Appellant's Brief flagrantly disregards the requirements of the Indiana Rules of Appellate Procedure" and that Ballaban failed to file an appendix, relied upon facts that have no support in the record, that his "Statement of Case and Statement of Facts are littered with argument," that his argument is not supported by cogent reasoning or citation to the record and authority, and that "Ballaban's noncompliance with the appellate rules is substantial, permeates his brief and precludes this Court's meaningful review of his arguments on appeal." Appellees' Brief at 17. While we find Ballaban's arguments unpersuasive, Ballaban attempted to support his argument with legal authority and filed an appellant's supplemental appendix. We find that Ballaban's challenge is consistent with reasonable advocacy and do not find that he "flagrantly disregard[ed] the form and content requirements of the rules of appellate

19

procedure" or that his briefs were "written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." See Thacker, 797 N.E.2d at 346-347 (citation omitted). Accordingly, we deny Appellees' request for appellate attorney fees. See Nationwide Ins. Co. v. Heck, 873 N.E.2d 190, 197 n.3 (Ind. Ct. App. 2007) (denying a request for appellate attorney fees under Appellate Rule 66(E) and noting that while Nationwide's initial brief and appendix were deficient in numerous ways those deficiencies did not warrant sanction and that Nationwide filed a supplemental appendix).

For the foregoing reasons, we affirm the trial court's ruling on Beth Shalom's motion for summary judgment and denial of Ballaban's motion to correct error, and we deny Appellees' request for appellate attorney fees.

Affirmed.

BAILEY, J., concurs in result with separate opinion.

VAIDIK, J., concurs in result with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN A. BALLABAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1207-CT-315 |
| | ) | |
| BLOOMINGTON JEWISH | ) | |
| COMMUNITY, INC., a/k/a | ) | |
| CONGREGATION BETH SHALOM, | ) | |
| PAUL EISENBERG, Individually and | ) | |
| as President, JUDITH ROSE, Individually | ) | |
| and as Vice President, SARAH | ) | |
| WASSERMAN, Individually and as | ) | |
| Treasurer, LYNNE FOSTER SHIFRISS, | ) | |
| Individually and as Past President, and | ) | |
| ROBERTA "DIDI" KERLER, Individually | ) | |
| and as Director of Gan Shalom, | ) | |
| | ) | |
| Appellees. | ) | |

**BAILEY, Judge, concurring in result**

The record before us does not include Rabbi Ballaban's complaint or amended complaint. It appears from the trial court's order and from the designated materials that Rabbi Ballaban brought claims of breach of contract, tortious interference with contract, negligent failure to supervise, defamation, and invasion of privacy. At their essence, the claims were premised upon his allegation that he was wrongfully discharged from his ministerial duties.

21

In seeking summary judgment, Beth Shalom relied upon Hosanna-Tabor Evangelical Lutheran Church and School v. Equal Employment Opportunity Commission, 132 S. Ct. 694, 710 (2012) (observing "the church must be free to choose those who will guide it on its way") and Indiana Area Foundation of the United Methodist Church, Inc. v. Snyder, 953 N.E.2d 1174, 1180 (Ind. Ct. App. 2011) (reiterating, in dismissing breach of contract and defamation claims on summary judgment, that the ministerial exception protects the "fundamental right of churches to decide for themselves matters of church government, faith and doctrine"). Beth Shalom acknowledged that a court may apply secular standards when purely secular conduct is at issue. See Brazauskas v. Fort Wayne-South Bend Diocese, Inc., 796 N.E.2d 286, 294 (Ind. 2003).

In support of its contention that resolution of Rabbi Ballaban's complaint did not involve "purely secular conduct," Beth Shalom designated a termination of employment letter addressed to Rabbi Ballaban. The letter included as stated reasons for termination financial impropriety, breaches of confidentiality and "conduct unbecoming a spiritual leader." (App. 84.) With regard to the latter allegation, it was specified that a rabbi for Beth Shalom was expected to "abide by highest moral values and serve as a role model for our congregation and the community." (Appellee's App. 84.) It was stated that Rabbi Ballaban had been counseled by Rabbi Mills regarding this role. Accordingly, Beth Shalom established, prima facie, its entitlement to judgment as a matter of law.

In response, Rabbi Ballaban did not designate materials tending to show that the termination was prompted solely by reports of child abuse, a secular and statutory duty.

22

He cannot withstand summary judgment and have his day in court because he cannot show that the matter for resolution involves only conduct which is purely secular.

We should not, and cannot, be drawn into deciding whether an individual engaged in conduct becoming a spiritual leader. Accordingly, the ministerial exception applies and our discussion should proceed no further, despite Rabbi Ballaban's vigorous efforts to recast the dispute as purely secular conduct involving a statutory duty to report. It is clear to me, without extensive discussion of Constitutional clauses, that summary judgment was properly granted and the motion to correct error properly denied. Thus, I concur in the result reached by the majority.

# IN THE
# COURT OF APPEALS OF INDIANA

STEVEN A. BALLABAN, )
           )
    Appellant, )
           )
        vs. )    No. 53A01-1207-CT-315
           )
BLOOMINGTON JEWISH )
COMMUNITY, INC., a/k/a )
CONGREGATION BETH SHALOM, )
PAUL EISENBERG, Individually and )
as President, JUDITH ROSE, Individually )
and as Vice President, SARAH )
WASSERMAN, Individually and as )
Treasurer, LYNNE FOSTER SHIFRISS, )
Individually and as Past President, and )
ROBERTA "DIDI" KERLER, Individually )
and as Director of Gan Shalom, )
           )
    Appellees. )

**VAIDIK, Judge, concurring in result.**

I write separately to express my view that the ministerial exception does not allow a congregation to fire a spiritual leader who refuses to commit a criminal offense.

Failure to report child abuse is a criminal offense. *See* Ind. Code § 31-33-5-5. Children are notoriously reticent to report abuse. When the victims and their loved ones do confide in relatives, teachers, ministers, counselors, medical doctors, or other adults, the legislature has determined that it is a crime for those adults to fail to report the abuse

24

to the authorities. This law does not exempt spiritual leaders from reporting; indeed, often it is the ministers, rabbis, and other ecumenical leaders who are trusted with this information. This reporting law is designed to, and does, protect children from future abuse.

Ballaban, a rabbi, claims that he refused to conceal alleged child abuse committed by one of the teachers at Beth Shalom's school. He says that he was fired because he reported the child abuse to the authorities in defiance of Beth Shalom's orders to not do so. In other words, he claims that he refused to commit the criminal offense of failing to report child abuse—and because he did so, he was fired.

The majority does not reach the issue of whether Beth Shalom may fire Ballaban for refusing to commit a criminal offense at its request. Slip op. p. 17-18. I would find that Beth Shalom may not; that is, I would find that the ministerial exception does not apply to this situation. I believe this to be one of the "parade of horribles" referenced by Chief Justice Roberts in *Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission et al.*, 132 S. Ct. 694 (2012). In *Hosanna-Tabor*, the Chief Justice cites to the EEOC's prediction that the ministerial exception could protect religious organizations from liability for retaliating against employees for reporting criminal conduct. *Id.* at 710. Even the church in that case conceded that the ministerial exception would not in any way bar criminal prosecutions for interference with law-enforcement investigations or other proceedings. *Id.* Responding to this potential "horrible," Chief Justice Roberts wrote:

> The case before us is an employment discrimination suit brought on behalf
> of a minister, challenging her church's decision to fire her. Today we hold

that the ministerial exception bars such a suit. *We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers. There will be time enough to address the applicability of the exception to other circumstances if and when they arise.*

*Id.* (emphasis added). In my opinion, this case is precisely one of the "horribles" referenced by the Chief Justice—a "horrible" that the Court specifically declined to rule on.[9] *Hosanna-Tabor* does not require the ministerial exception's application here.

*Hosanna-Tabor* is nonetheless instructive. The ministerial exception allows a religious organization, free from government intrusion, to choose its own leaders who embody and live the tenets of the religion. *Id.* at 706. By way of example, the ministerial exception would prohibit an action under the Civil Rights Act by a woman claiming that the Catholic Church has discriminated against her by refusing to hire her as a priest, despite the Church's longstanding principle allowing only the ordination of men. To allow such an action would result in governmental interference with the tenets of the Catholic faith. Here, there is no governmental meddling with religious tenets in that there is no evidence to suggest that Judaism requires, or for that matter, condones, the concealment of child abuse. The ministerial exception does not apply here.

Having said this, the designated evidence does not reveal that the reason for Ballaban's termination was his child-abuse reporting. The record is replete with other

---

[9] As the majority notes, at oral argument in *Hosanna-Tabor*, Justice Sotomayor inquired about a scenario similar to this one, asking what would happen if a teacher was fired by a religious employer for reporting sexual abuse. Slip op. p. 16-17 (citing Brad Turner, *It's My Church and I Can Retaliate If I Want to: Hosanna-Tabor and the Future of the Ministerial Exception*, 7 Duke J. Const. L. & Pub. Pol'y Sidebar 21, 38-39 (2011)). Hosanna-Tabor's counsel responded that it would be appropriate for the Court to carve out a child-abuse reporting exception to the ministerial exception to address that type of situation. Although the Court did not carve out such an exception in *Hosanna-Tabor*—where child-abuse reporting was not at issue—the Court's decision to reserve judgment on the issue may be partially explained by this exchange.

26

reasons for Ballaban's termination, including his mistreatment of a donation to the congregation which threatened Beth Shalom's tax-exempt status, breach of confidentiality by forwarding private emails, and "angry outbursts and general hostile behavior." Appellee's App. p. 83-84. For this reason, I respectfully concur in result with the majority's decision to affirm the grant of summary judgment and denial of motion to correct error, and concur in full with the majority's denial of Beth Shalom's request for appellate attorney's fees.