**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**NFN VALANCE**
Fort Wayne, Indiana

APPELLEE PRO SE:

**BRANDY L. VALANCE**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NFN VALANCE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 17A03-1209-PO-380 |
| | ) | |
| BRANDY L. VALANCE, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE DEKALB SUPERIOR COURT
The Honorable William C. Fee, Special Judge
Cause No. 17D02-1207-PO-145

**August 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

NFN Valance,[1] (hereinafter "Valance") *pro se*, appeals the trial court's issuance of a protective order against him in favor of Brandy L. Valance (hereinafter "Brandy"). Valance raises two issues, which we consolidate and restate as whether there was sufficient evidence to issue the protective order. We affirm.

PROCEDURAL HISTORY

In July 2012, Brandy filed a petition for a protective order in which she alleged that Valance used to be her spouse and placed her in fear of physical harm. The petition included descriptions of five incidents from 2010 to 2012 and alleged that Valance had committed acts of domestic family violence by placing her in fear of physical harm and by committing stalking against her. On July 6, 2012, the court approved an *ex parte* protective order. On July 11, 2012, the court set the matter for hearing.

On August 13, 2012, the court held a hearing on Brandy's petition at which Brandy testified regarding Valance's conduct and that his actions placed her in fear, and Valance testified and presented arguments regarding his actions. On August 17, 2012, the court issued a permanent protective order, finding that Valance represents a credible threat to the safety of Brandy or a member of her household and that Brandy had shown by a preponderance of the evidence that stalking had occurred sufficient to justify the issuance of the order. The order provides that exchanges of the children for parenting time will occur at the Fort Wayne Police Department without the parties having to come into proximity with each other.

---

[1] Valance captioned his brief as "Valance v. Brandy L. Valance" but the printed name below his signature in his brief is "NFN Valance." Appellant's Brief at 17. Captions in various pleadings he filed say "NFN Valance."

2

ISSUE

The issue is whether there was sufficient evidence to issue the protective order. When a trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review; first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. Mysliwy v. Mysliwy, 953 N.E.2d 1072, 1075-1076 (Ind. Ct. App. 2011), trans. denied. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. Id. at 1076. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. Id. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. Id. We do not defer to conclusions of law, however, and evaluate them *de novo*. Id. In reviewing the sufficiency of the evidence to support an order of protection, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 1076 (citing Tisdial v. Young, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010)). We consider only the probative evidence and reasonable inferences supporting the trial court's judgment. Tisdial, 925 N.E.2d at 785.

We note that both Valance and Brandy represent themselves on appeal and that such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. "This court will not indulge in any benevolent presumptions on their behalf, or waive any rule for the orderly and proper conduct of their appeal." Ballaban v.

3

Bloomington Jewish Cmty., Inc., 982 N.E.2d 329, 334 (Ind. Ct. App. 2013) (citation and internal quotation marks and brackets omitted).

Valance requests this court to reverse the protective order issued by the trial court because the evidence used to support the order was constitutionally or statutorily protected conduct and that Brandy's feelings of fear were unreasonable. Specifically, Valance argues with respect to the first and third incidents described by Brandy that evidence was introduced that Brandy was regularly interfering with his parenting time rights and he was permitted to send police officers to her house and attempt to have contact with the children. With respect to the second incident he contends that Brandy did not present corroborating testimony and that he did not call their child to the stand to impeach Brandy's testimony because he believed he was unable to do so. Regarding the fourth incident he maintains that his action of posting pictures of Brandy on his Facebook page was constitutionally protected, and with respect to the fifth incident, the circumstance of his mother's passing made time of the essence and he did not believe anyone else knew how to contact Brandy. Brandy's position is that the trial court did not err in issuing the protective order based on the evidence presented, which included her testimony regarding five incidents involving Valance, and that the court did not err in finding that Valance's actions placed Brandy in fear.

## DISCUSSION

Civil orders for protection are governed by the Civil Protection Order Act (the "CPOA"). Mysliwy, 953 N.E.2d at 1076. The CPOA "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt,

4

and effective manner; and (2) prevention of future domestic and family violence." Id. (citing Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004)).

Ind. Code § 34-26-5-2(a) provides:

A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a:

> (1) family or household member who commits an act of domestic or family violence; or

> (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner.

To obtain a protective order under the CPOA, the petitioner must establish by a preponderance of the evidence at least one of the allegations in the petition. Mysliwy, 953 N.E.2d at 1076 (citing A.S. v. T.H., 920 N.E.2d 803, 806 (Ind. Ct. App. 2010)). Thus, Brandy's burden was to prove the requirements of either Ind. Code § 34-26-5-2(a)(1) or (2). See id.

Ind. Code § 34-6-2-34.5 provides in part that "domestic or family violence" means, "except for an act of self-defense, the occurrence of at least one (1) of the following acts committed by a family or household member: (1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member. (2) Placing a family or household member in fear of physical harm. . . ." Further, Ind. Code § 34-26-5-9(f) provides in part:

A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

5

In addition, Ind. Code § 34-6-2-34.5 provides in part that "[f]or purposes of IC 34-26-5, domestic and family violence also includes stalking (as defined in IC 35-45-10-1) . . . , whether or not the stalking . . . is committed by a family or household member." Ind. Code § 35-45-10-1 provides that "'stalk' means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened" and that "[t]he term does not include statutorily or constitutionally protected activity." Ind. Code § 35-45-10-2 provides in part that "'[h]arassment' means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-3 provides that "'[i]mpermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim."

At the August 13, 2012 hearing, Brandy testified regarding five incidents which were alleged in her petition. She testified that Valance is the father of her two children, ages fourteen and seven, and that with respect to the first incident, in 2010 her boyfriend and her parents received phone calls from Valance when she was not with them and demanded that the children call him back. She stated that there were also "some 'blocked' phone calls" on her cell phone which she believed were probably from Valance "because when [she] got home there were eleven (11) phone calls to [her] home phone from him." Id. at 8. She further stated that "[a]nd then that's when there was also a note

6

from a police officer saying the police had been to [her] door because [Valance] called them looking for [her] and the kids." Id.

With respect to the second incident, Brandy testified that, on January 23, 2011, she was meeting with Valance at a McDonald's to exchange their children and that her boyfriend had gone with her. She said that Valance leaned into her boyfriend's car to "buckle" their youngest son and that he reached over the kids and punched her boyfriend multiple times. Id. at 7. She stated she called 911 and that Valance said "[g]o ahead, call the police," took a few steps toward her, and reached out to try to grab her phone. Id.

With respect to the third incident, Brandy testified that, in February 2011, Valance contacted the police and sent them to her house because "apparently he had been calling [her] house or looking for the kids or something." Id. at 6. She stated that she felt that Valance was using the police to harass her and that there was no legitimate reason why the police would be at her house.

With respect to the fourth incident, Brandy testified that in the fall of 2011, she observed that Valance "had [her] picture all over his Facebook page," that the pictures were still there after she filed for the protective order, and that "there were multiple pictures." Transcript at 5. Brandy indicated that she did not have contact with Valance through Facebook, that she had attached to her petition copies of the photographs which included Valance's comments accompanying the photographs, that she felt threatened because the pictures were of her only and not the children, and that she had been divorced since December 2008.

With respect to the fifth incident, Brandy testified that, in April of 2012, her co-worker informed her that Valance had attempted to place a collect call to Brandy at work while he was in jail, that the co-worker did not accept the call and thus Valance did not leave a message, and that, at the time, Brandy had a no contact order in place. She said that the no contact order was the result of Valance violating a previous protective order in a different case.

On cross-examination by Valance's counsel, Brandy responded affirmatively when asked whether the first three incidents were addressed as part of her domestic relations case, whether the February 2011 incident with the police occurred because Valance was attempting to make contact with the children and could not locate them, and whether the incident at the McDonald's gave rise to a criminal conviction. Brandy indicated that she did not ask Valance to take down the photographs of her on his Facebook page because they did not talk except in dealing with the children. With respect to the fifth incident, Brandy indicated that Valance's mother had passed away, that it was possible that Valance was trying to contact the children to see their grandmother before she died, that she had been in contact with Valance's brothers and sisters so the children knew what was going on, and that she did not know if it was Valance's intention to call her to stalk her or because his mother was dying.

Valance testified that he thought Brandy's request for the protective order was harassment. He testified that in April he received a call from his brother-in-law that doctors were going to take Valance's mother off of life support, that only his mother knew how to reach Brandy at work, and that his first thought was to make sure that he

8

called Brandy to let her know to take the children to see their grandmother before she died. Valance testified that he had relatives scattered through the country and that all of the photographs of Brandy on his Facebook page were not new and were taken while they were together. Valance testified that Brandy did not bring one of her sons into the courtroom because the child could "sit on the stand and testify to the fact that [Valance] never touched [Brandy's boyfriend] and that's why the battery charge was thrown out." Id. at 19.

At the close of the parties' evidence and arguments, the court stated that "a reasonable person might conclude that there's . . . a basis for someone to be fearful or feel threatened," that Valance "seems to find a way . . . to come into contact with [Brandy] either through second parties, like the police, [or] through a Facebook page," and that "there's no doubt that [Brandy is] in fear." Id. at 26. The court iterated that it did not think that Brandy was not being genuine, that Brandy was fearful of Valance, and that "there are reasons associated [with] [Valance's] conduct that cause her to feel that way [] that have managed to repeat themselves over time." Id. The court further stated that the case turned on whether a reasonable person might be placed in fear and that it believed that Brandy's version of the evidence is more likely true than Valance's version.

## DECISION

As found by the trial court, the evidence presented at the August 13, 2012 hearing demonstrates that Brandy was the victim of domestic or family violence, was placed in fear of physical harm by Valance, and that her fear was reasonable, and this court does not reweigh the evidence or judge the credibility of witnesses. See Mysliwy, 953 N.E.2d

9

at 1076. Based upon the record, we conclude that Brandy presented evidence of probative value to establish by a preponderance of the evidence that she was placed in fear of physical harm, thus supporting the court's finding that Valance represents a credible threat to the safety of Brandy and or a member of her household, and to support the issuance of the protective order. See Hanauer v. Hanauer, 981 N.E.2d 147, 149-150 (Ind. Ct. App. 2013) (concluding that the record supported the trial court's findings that the husband represented a credible threat to the safety of wife or a member of her household and affirming the issuance of a protective order); Mysliwy, 953 N.E.2d at 1076-1077 (finding that the petitioner presented sufficient evidence that the respondent committed domestic or family violence by placing the petitioner in fear and thus to support the issuance of the protective order).[2]

## CONCLUSION

For the foregoing reasons, we affirm the trial court's issuance of the protective order.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

---

[2] Because we find that the evidence supports the issuance of the protective order on the basis that Valance committed domestic or family violence, we need not address whether the evidence also shows that he committed stalking. See Hanauer, 981 N.E.2d at 150 n.2 (noting that, because this court concluded that there was sufficient evidence to support the protective order under Ind. Code § 34-26-5-2(a)(1), we did not need address the wife's argument that there also was sufficient evidence to support the protective order on the alternative grounds of stalking); Mysliwy, 953 N.E.2d at 1076 (noting the petitioner was only required to show Ind. Code § 34-26-5-2(a)(1) or (2)). We also note that Valance's argument that his actions were statutorily or constitutionally protected activity relate only to whether his actions constituted stalking. See Ind. Code § 35-45-10-1 (noting that the term "stalk" does "not include statutorily or constitutionally protected activity").