## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 15 2016, 7:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Matt Black
Adam Clay
Black Clay, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Dan J. May
Kokomo, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

James Wright,

*Appellant-Petitioner,*

v.

Natasha G. Wright,

*Appellee-Respondent.*

September 15, 2016

Court of Appeals Cause No.
34A04-1601-DR-60

Appeal from the Howard Superior Court

The Honorable George A. Hopkins, Judge

Trial Court Cause No.
34D04-1205-DR-467

**Barnes, Judge.**

# Case Summary

James Wright appeals the denial of his motion to compel discovery in the dissolution of his marriage to Natasha Wright. We affirm.

# Issues

James raises three issues, which we consolidate and restate as whether the trial court properly denied his motion to compel discovery regarding the paternity of their child. Natasha argues that she is entitled to damages and appellate attorney fees pursuant to Indiana Appellate Rule 66(E).

# Facts

Q.W. was born to Natasha in November 1997, and the parties married in July 1998. In May 2012, James filed a petition for dissolution of marriage. On November 20, 2012, the trial court dissolved the parties' marriage. The trial court noted that the parties were the parents of Q.W., ordered that the parties have joint legal custody of Q.W., ordered that Natasha have physical custody of Q.W., and ordered that James have parenting time and pay $174 per week in child support. The trial court noted that issues pertaining to the division of the marital estate and delinquent child support would be considered at a later hearing.

In November 2013, James filed an emergency motion to set aside portions of the November 2012 order and terminate or stay the income-withholding order. James alleged that Q.W. told him she had taken a paternity test and that he was not her father. In an email exchange, Natasha's attorney confirmed with

James's attorney that a paternity test indicates that another man is Q.W.'s biological father. The trial court held a hearing, found that the email exchange was not dispositive of the issues in this cause, and denied James's motion.

In February 2014, James sent an interrogatory to Natasha requesting "the date of any and all paternity tests scheduled, attempted, completed, and/or cancelled regarding the paternity of [Q.W.]." App. p. 42. Natasha objected to the interrogatory based on medical privilege and *Fairrow v. Fairrow*, 559 N.E.2d 597 (Ind. 1990). James then filed a motion to compel, which the trial court denied. James sought to file an interlocutory appeal, but this court denied his motion. The trial court entered judgment regarding the property settlement issues on January 14, 2016. James now appeals.

## Analysis

### I. Motion to Compel

James argues that the trial court abused its discretion by denying his motion to compel Natasha to answer the interrogatory regarding paternity tests. A trial court has broad discretion in ruling on discovery issues, and we will reverse only where it is apparent the trial court abused that discretion. *WESCO Distribution, Inc. v. ArcelorMittal Indiana Harbor LLC*, 23 N.E.3d 682, 712 (Ind. Ct. App. 2014), *trans. dismissed*. Indiana Trial Rule 26(B)(1) governs the scope of discovery and provides in pertinent part that: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action . . . ." Initially, the trial court must determine

whether the information requested is relevant to the issues being tried. *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 516 (Ind. Ct. App. 1995). If the information is deemed relevant, then the trial court must next determine whether a privilege exists to protect the information from discovery. *Id.*

[7] Both parties rely on our supreme court's opinion in *Fairrow v. Fairrow*, 559 N.E.2d 597 (Ind. 1990).[1] There, the parties had a child who tested positive for the genetic trait that causes sickle cell anemia. Many years after the parties' dissolution was final, doctors recommended that the ex-husband be tested for the sickle cell trait. Testing revealed that the ex-husband did not carry the trait and could not be the child's biological father. The ex-husband filed a motion to terminate his child support obligation under Indiana Trial Rule 60(B), which the trial court denied. Our supreme court held that this was a "very unusual case" and that the motion should have been granted. *Fairrow*, 559 N.E.2d at 599. In particular, our supreme court emphasized that the ex-husband had not sought genetic testing because he wanted to stop paying child support. Rather, he "stumbled upon medical evidence" that he could not be the child's father. *Id.* The court noted:

> Although we grant Joe relief, we stress that that [sic] the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In

---

[1] James makes no argument that the trial court's November 2012 order regarding Q.W. was not final and that he was still entitled to challenge whether Q.W was a child of the marriage as part of the dissolution proceedings. James's argument is based only on *Fairrow* and the Indiana Parenting Time Guidelines. Consequently, we will address the argument as presented.

granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without *externally obtained clear medical proof* should be rejected as outside the equitable discretion of the trial court.

In sum, we strongly discourage relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence akin to the evidence presented in this case.

*Id.* at 600 (emphasis added).

[8] Then, in *Leiter v. Scott*, 654 N.E.2d 742 (Ind. 1995), an ex-husband requested a trial court to order DNA testing to prove that he was not the biological father of a child identified as his child in the parties' dissolution decree. The trial court dismissed his petition and, based on *Fairrow*, our supreme court affirmed. The court noted "the substantial disadvantages of allowing divorce litigants to use paternity as a tool in the frequently rambunctious atmosphere following the dissolution of a marriage." *Leiter*, 654 N.E.2d at 743.

[9] Since *Fairrow* and *Leiter*, our courts have consistently held that "the use of genetic testing to set aside paternity is outside the equitable discretion of the trial court." *In re Paternity of T.M.Y.*, 725 N.E.2d 997, 1005 (Ind. Ct. App. 2000), *trans. denied*. The "externally obtained" clear medical proof required by *Fairrow* "means that the evidence establishing non-paternity was not actively sought by the putative father, but was discovered almost inadvertently in a manner that was unrelated to child support proceedings." *Tirey v. Tirey*, 806

N.E.2d 360, 363 n. 2 (Ind. Ct. App. 2004), *trans. denied*; *see also In re M.M.B.*, 877 N.E.2d 1239, 1242 (Ind. Ct. App. 2007) (holding that the father was not entitled to relief from the paternity judgments where he actively sought genetic evidence after the children told him that he might not be their father and he did not inadvertently obtain medical proof through ordinary medical care).

[10] Here, James is actively seeking genetic evidence that he is not Q.W.'s biological father. He did not inadvertently obtain medical proof of non-paternity through ordinary medical care, and the very limited exception discussed in *Fairrow* is inapplicable here. Even if the trial court had wanted to grant James's discovery request, it was barred from doing so.[2] *See T.M.Y.*, 725 N.E.2d at 1005 (holding that the trial court properly denied the father's discovery request regarding paternity testing). The results of the paternity testing were not relevant, and the trial court properly denied James's motion to compel.

## II. Appellate Attorney Fees

[11] We next turn to Natasha's request for damages and appellate attorney fees pursuant to Indiana Appellate Rule 66(E). Indiana Appellate Rule 66(E)

---

[2] James also seems to argue that he was entitled to the paternity test results pursuant to Indiana Parenting Time Guideline I(D)(4), which provides that "both parents are entitled to direct access to their child's medical records, Indiana Code § 16-39-1-7; and mental health records, Indiana Code § 16-39-2-9." Indiana Code Section 16-39-1-7 provides: "[A] custodial parent and a noncustodial parent of a child have equal access to the parents' child's health records." A "health record" or "medical record" is defined as "written or printed information possessed by a provider (as defined in IC 16-18-2-295) concerning any diagnosis, treatment, or prognosis of the patient, unless otherwise defined. Except as otherwise provided, the terms include mental health records and drug and alcohol abuse records." Ind. Code § 1-1-4-5. There is no indication that the alleged paternity testing concerned any diagnosis, treatment, or prognosis of Q.W., and Parenting Time Guideline I(D)(4) does not apply here.

provides in part that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorneys' fees under Ind. Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Ballaban v. Bloomington Jewish Cmty.*, Inc., 982 N.E.2d 329, 339-40 (Ind. Ct. App. 2013). "[W]e must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Id.* at 340. "A strong showing is required to justify an award of appellate damages and the sanction is not imposed to punish mere lack of merit but something more egregious." *Id.*

[12] We have classified claims for appellate attorney fees into substantive and procedural bad faith claims. *Id.* To prevail on a substantive bad faith claim, the party must show that "the appellant's contentions and arguments are utterly devoid of all plausibility." *Id.* Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.*

[13] Natasha argues that James's appeal is devoid of all plausibility and that his statement of the facts was inadequate. Although we find James's arguments unpersuasive, we cannot say that his arguments were devoid of all plausibility or that he flagrantly disregarded the rules of appellate procedure. Accordingly,

we deny Natasha's request for damages and appellate attorney fees pursuant to Indiana Appellate Rule 66(E).

## Conclusion

[14] The trial court properly denied James's motion to compel Natasha to produce the results of paternity testing. We deny Natasha's request for damages and appellate attorney fees pursuant to Indiana Appellate Rule 66(E). We affirm.

[15] Affirmed.

Riley, J., and Bailey, J., concur.