## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2017, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Franceschini
Ayres Carr & Sullivan, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Stephen W. Cook
Cook & Cook
Noblesville, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

In the Matter of the Estate of Margaret S. Jones, Deceased,

John A. Jones, Jr., Personal Representative,

*Appellant/Cross-Appellee-Defendant,*

v.

Joyce E. Schaefer, Beneficiary,

*Appellee/Cross-Appellant--Plaintiff,*

and

December 21, 2017

Court of Appeals Case No.
29A04-1703-ES-584

Appeal from the
Hamilton Superior Court

The Honorable
Steven R. Nation, Judge

Trial Court Cause Nos.
29D01-0802-ES-32
29D01-0804-MI-422

Suzanne D. VanGombos and
Shar A. Windle,[1] Beneficiaries,

*Nominal Appellees-Defendants.*

**Kirsch, Judge.**

[1] John A. Jones, Jr. ("Jones" or "Personal Representative"), as Personal Representative of the Estate of Margaret S. Jones, appeals the trial court's September 26, 2016 order ("September 2016 Order"), which was a judgment issued on remand. The September 2016 Order granted Joyce E. Schaefer's ("Schaefer") objection to the Personal Representative's Amended Supplemental Report of Distribution ("Amended Distribution Report") and ordered the estate to pay Schaefer $5,371.42 for property taxes due and payable in 2013 and 2014 on land transferred to Schaefer in December 2013. On appeal, the Personal Representative raises the following restated issues:

> I. Whether the trial court erred when it refused to approve the Personal Representative's Amended Distribution Report and, instead, ordered the Personal Representative to pay Schaefer property taxes due and payable in 2014 and calculated an

---

[1] Shar E. Windle is also referred to as Shar A. Windle, Sharlene J. Windle and Charlene J. Windle. *Appellant's App. Vol. 2* at 42, 45, 46.

amount the estate owed Schaefer without allowing credit against that debt for $1,709.00, which the estate had previously reimbursed Schaefer for repairs, and $1,586.00, which the estate paid as advance payments against the property tax that was due and payable in 2013; and

II. Whether Schaefer acted in bad faith and misled the trial court such that she should be ordered to pay the estate's appellate attorney fees and the costs of the instant action.

In her cross-appeal, Schaefer raises the following restated issue:

III. Whether the trial court erred by allowing the Personal Representative to pay attorney fees in the amount of $186,417.00, when the parties agreed to that amount in a settlement agreement, which was approved by the trial court.

We affirm in part and reverse in part.

## Facts and Procedural History[2]

This case returns to us on remand, which followed this court's unpublished memorandum decision, dated May 15, 2015. *In re Estate of Jones*, No. 29A02-1410-ES-736, 32 N.E.3d 846 (Ind. Ct. App. May 15, 2015) ("*Jones I*"). In *Jones*

---

[2] On May 26, 2017, our court granted the Personal Representative's Amended Verified Motion to Allow Use of Record of Former Appeal. Accordingly, the clerk of our court was directed to transfer the record of proceedings from Cause Number 29A02-1410-ES-736 to be part of the record for this appeal. Because there are appendices and exhibits in each appeal, we will use the introductory words "Prior Case" to cite to records from the first appeal.

*I*, we set forth the underlying facts, the following of which are pertinent to this appeal.

[4] Margaret S. Jones ("Decedent"), while living on a farm in Hamilton County, Indiana, died testate on November 28, 2007, leaving the following four children as her surviving heirs: Schaefer; Jones; Suzanne D. VanGombos; and Shar E. Windle. In February 2008, Decedent's estate was opened ("the Administration Case"), and Jones was appointed Personal Representative. In April 2008, Schaefer filed a complaint ("the Contest Case"), claiming that an incorrect will had been admitted to probate. The parties resolved their dispute by way of a settlement agreement ("Settlement Agreement"), which the trial court approved on March 16, 2012.

[5] As is pertinent to this appeal, the Settlement Agreement provided that (1) Schaefer would receive the farmhouse plus five acres ("Five-Acre Tract") of Decedent's farmland, (2) the remaining farmland would be sold, with proceeds being used to settle claims against the estate, including expenses regarding the Administration Case and the Contest Case, and (3) the estate would pay fees and expenses incurred by Schaefer's attorneys and the estate's attorneys for services performed in connection with the Administration Case and the Contest Case. *Prior Case Appellant's App*. at 37-40. Specifically, with regard to attorney fees and expenses, the beneficiaries agreed to pay, and the attorneys agreed to receive as compromise and satisfaction of their claims, a total of $186,417.00. *Id*. at 40-41.

[6]     After the parties had entered into the Settlement Agreement, a dispute arose between Schaefer and the estate regarding which parcels of land would constitute Schaefer's Five-Acre Tract; that dispute was resolved in an agreed entry in the Administration Case, filed July 2012. In May and August 2012, while living on the Five-Acre Tract, Schaefer paid a total of $1,709.00 for the repair and maintenance of the property. Estate funds were used to pay property taxes that had been assessed for 2011, but were due and payable in 2012.

[7]     On December 7, 2012, more than four years after the estate was opened, the Personal Representative filed a final account ("Final Account"), and a request to distribute assets and close Decedent's estate. As part of the Final Account, the Personal Representative listed a disbursement of $1,586.00, which was labeled, "Est. 2012 Pay 2013 Prop. Tax Split." *Prior Case Appellant's App*. at 116. This $1,586.00 represented the amount the estate had paid at closing to purchasers of the remaining farmland ("Purchasers"), which amount was deemed to be an advance on the property taxes due and payable in 2013. *Id*. Also listed in the Final Account were disbursements for attorney fees totaling $186,417.00, the amount the parties had agreed to in the Settlement Agreement. *Id*. at 117.

[8]     The hearing on the Final Account was initially scheduled for December 2012, but repeated continuances pushed the hearing back a full year. Just days before the hearing, Schaefer filed an objection to the Final Account, alleging that the Personal Representative (1) failed to keep farm buildings in repair, (2) failed to pay real estate taxes, and (3) failed to maintain the property as it was when the

parties entered into the Settlement Agreement. *Id*. at 122. Following a hearing, the trial court entered its order on December 17, 2013 ("December 2013 Order"), approving the Final Account, and thereby, also approving the disbursements of $1,586.00 to Purchasers for 2013 Taxes and $186,417.00 for attorney fees. The trial court also permitted the Personal Representative to distribute the assets and close the estate, but not before the estate reimbursed Schaefer for the $1,709.00 she paid in repair expenses. The Personal Representative complied. *Id*. at 126.

[9] In January 2014, the Personal Representative filed a motion for *nunc pro tunc* seeking to clarify the language of the December 2013 Order to reflect that property taxes, assessments, and penalties, first due and payable after the filing of the Settlement Agreement, approved in 2012, were the obligation of Schaefer. When Schaefer did not respond to the trial court's request for a response, the trial court granted the Personal Representative's motion, thus making Schaefer liable for the taxes, assessments, and penalties due and payable in 2013 ("the 2013 Taxes").

[10] Thereafter, Schaefer filed an amended motion for relief from the *nunc pro tunc* judgment, claiming, in pertinent part that (1) the Settlement Agreement had been reached under the assumption that the "real estate taxes and assessments due in 2013" would be paid by the estate; (2) Schaefer was surprised to receive a 2014 tax statement showing a carry over for a delinquency for some of the 2013 Taxes; (3) testimony at the December 9, 2013 hearing indicated that all 2013 Taxes and assessments had been paid; and (4) sales information published by

the estate indicated that 2013 taxes payable in 2014 would be paid by the estate. *Appellant's App. Vol. 2* at 35. Schaefer asked the court to direct the Personal Representative, to "pay the amount of the delinquency and 2013 taxes payable in 2014." *Id*. at 36.

[11] The trial court held a hearing on Schaefer's motion for relief from the *nunc pro tunc* judgment and granted Schaefer's motion on August 1, 2014 ("the August 2014 Order"). The August 2014 Order, in pertinent part, provided that (1) "property owners are responsible for the property taxes assessed upon their property"; (2) the estate held the deed to the Five-Acre Tract until December 23, 2013—the date on which the December 2013 Order approving the Final Account was recorded, thereby transferring possession of the Five-Acre Tract to Schaefer; and (3) the *nunc pro tunc* order improperly created a material change to the trial court's prior ruling.[3] *Id*. at 43-44. The trial court vacated the *nunc pro tunc* order and directed the Personal Representative to "reinstat[e] the original conveyance as recorded on December 23, 2013." *Id*. at 44. This action resulted in the estate being responsible for "all property taxes, special assessments, delinquencies, and penalties assessed on the Five-Acre Tract *due and payable prior to the vesting of title* in Joyce E. Schaefer" on December 23, 2013. *Id*. (emphasis added).

---

[3] The trial court also ordered the Personal Representative to pay Schaefer's attorney fees in the amount of $3,000.00. *Appellant's App. Vol. 2* at 45. That award, however, was overturned by this court in *Jones I*, 32 N.E.3d 846 at *8.

[12] On August 28, 2014, the Personal Representative filed a motion to correct error, raising two issues. First, he claimed that it was improper for the estate to be liable for property taxes and other related fees that had been assessed in 2012 but would be due and payable in 2013, when the property had, in effect, been "distributed to [Schaefer] by [the trial] court's orders of March 16, 2012, approving the Family Settlement Agreement, and July 12, 2012, approving the Agreed Entry Identifying Five Acre Parcel." *Prior Case Appellant's App*. at 157. Next, he argued that the estate should not have been liable for Schaefer's repairs, totaling, $1,709.00, when Schaefer was in full possession of the property at the time the repairs were made. *Id*. at 158. Schaefer filed her response and, after considering the Personal Representative's motion and Schaefer's response to the Personal Representative's motion, the trial court denied the Personal Representative's motion to correct error, thereby, making the estate liable for taxes due and payable in 2013 and for $1,709.00 in repair costs.

[13] It was then that the Personal Representative filed his first appeal, arguing that the trial court erred in denying his motion to correct error. As pertinent to the instant appeal, the Personal Representative asserted that the trial court erred in making the estate liable for property taxes due and payable in 2013 and for repairs in the amount of $1,709.00. Our court reversed the trial court on the issue of repairs, concluding that, because the estate was not responsible for the day-to-day operations of the Five-Acre Tract when the repairs were made, Schaefer, and not the estate, was responsible for the payment of $1,709.00.

*Jones I*, 32 N.E.3d 846 at *6. However, we affirmed the trial court's determination that the Personal Representative was "liable for taxes [incurred in 2012] that become due and payable before the estate is settled," *i.e.*, due and payable before December 2013. *Id.* We reasoned that, pursuant to Indiana Code section 29-1-14-9, the Personal Representative has an obligation to pay property taxes while the estate is open. *Id.* Qualifying that statement, however, we said:

> [N]o personal representative shall be required to pay any taxes on any property of the decedent unless such taxes are *due and payable* before possession thereof is delivered by the personal representative pursuant to the provisions of IC 29-1. In summary, the relevant statutory authority clearly indicates that the *personal representative is liable for property taxes that become due and payable before the estate is settled*. Jones has failed to establish that the trial court's order that Jones pay all property tax due and payable prior to the closing of the estate, which occurred on December 17, 2013, is clearly erroneous.

*Id.* (emphasis added). We remanded the case with instructions "for *entry of a new order consistent with [our] memorandum decision*." *Id.* at *8 (emphasis added). Neither party sought further review of this decision.

[14]     On remand, the trial court directed counsel for the Personal Representative "to prepare and file with [the trial court] a proposed order in conformity with [*Jones I*]," *i.e.*, an order reflecting that Schaefer would be liable for the $1,709.00 in repairs and that the estate would be liable for property taxes on the Five-Acre Tract that were due and payable before the closing of the estate in December

2013. *Appellant's App. Vol. 2* at 15. On October 23, 2015, the Personal Representative complied with the trial court's order and filed the Amended Distribution Report, including his calculation that $1,544.70 was due to Schaefer for 2013 Taxes. The Personal Representative attached to the Amended Distribution Report a copy of the cashier's check in that amount, made out to Schaefer, which he had sent to Schaefer's attorney as full payment of the debt.

[15] On November 2, 2015, Schaefer filed her objections to the Amended Distribution Report, contending, in part, that the estate was liable (1) for some delinquent 2013 Taxes and penalties, and (2) for property taxes assessed in 2013 that were due and payable in 2014. *Id.* at 73-74. In her objections, Schaefer also requested reasonable attorney fees for her counsel, Stephen Cook. *Id*. at 74. Following a hearing, the trial court entered the September 2016 Order, granting Schaefer's objection and holding, "[T]he Personal Representative of the Estate is ordered to comply with the previous Order and to pay the sum of $5,371.42 to reimburse [Schaefer] for her previous payment of taxes and assessment. [Schaefer's] Objection should be and is hereby DENIED concerning her request to allow reasonable attorney fees. *Id*. at 20.

[16] Thereafter, the Personal Representative and Schaefer each filed a motion to correct error. The Personal Representative argued that the trial court erred by holding the estate liable for property taxes due and payable in 2014, while Schaefer argued that the trial court should have granted her December 2014

Trial Rule 60(B) motion for relief from judgement, regarding attorney fees. Schaefer asserted that the Personal Representative should not have been allowed to pay attorney fees in excess of $180,000.00 without first complying with Hamilton County Local Rule 29-PR00-711; a rule that required the Personal Representative to file a formal statement with the trial court setting forth the time expended by attorneys and the nature of services they rendered. *Cross-Appellant and Appellee's Appendix Vol. 2* at 70-71. On January 25, 2017, the trial court held a hearing on the parties' motions to correct error. When the trial court did not rule on either motion within thirty days after the hearing, the motions were deemed denied. *See* Ind. Trial Rule 53.3. The Personal Representative now appeals.

## Discussion and Decision

## I. Amended Distribution Report

[17] On appeal, the Personal Representative contends that the trial court abused its discretion when, on remand, it did not approve the estate's Amended Distribution Report, but instead, ordered the estate to pay Schaefer the sum of $5,371.42. Specifically, the Personal Representative contends that the trial court erred in denying his motion to correct error because the ordered sum was incorrect in that it (1) included property taxes due and payable in 2014, the year after Schaefer had taken possession of the Five-Acre Tract, (2) did not reflect credit for the $1,586.00 of 2013 Taxes paid to the Purchasers, and (3) did not reflect credit for a $1,709.00 reimbursement the Personal Representative paid to Schaefer for repairs. The Personal Representative contends that, under the law

of the case, this court should reverse the trial court's order directing the Personal Representative to pay $5,371.42, and instead, approve the Amended Distribution Report. We agree.

[18] We generally review a trial court's ruling on a motion to correct error for an abuse of discretion. *Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*; *In re Marriage of Dean*, 787 N.E.2d 445, 447 (Ind. Ct. App. 2003), *trans. denied*. However, where the issues raised in the motion are questions of law, the standard of review is *de novo*. *Watson*, 70 N.E.3d at 384.

[19] Pursuant to the law-of-the-case doctrine, "an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts." *In re Larry L. Thompson Revocable Tr.*, 954 N.E.2d 1056, 1062 (Ind. Ct. App. 2011); *Pinnacle Media, LLC v. Metro. Dev. Comm'n of Marion Cnty.*, 868 N.E.2d 894, 901 (Ind. Ct. App. 2007), *trans. denied*. "The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court." *Pinnacle Media*, 868 N.E.2d at 901. Generally, "under the law-of-the-case doctrine, relitigation is barred for all issues decided directly or by implication in a prior decision." *Id.* (internal quotation marks omitted). However, "[a] court has the power to revisit prior decisions of its own or of a coordinate court . . . , although as a rule courts should be loath to do so in the

absence of extraordinary circumstances." *Thompson Revocable Tr.*, 954 N.E.2d at 1062.

[20] Recognizing that this has been a prolonged estate administration with extensive litigation, it is important to highlight that the question before us is whether the trial court erred when it concluded that the Personal Representative's Amended Distribution Report did not correctly reflect the status of the case after *Jones I*, a case in which neither party sought further review. In *Jones I*, our court made a final determination on two key issues: (1) that Schaefer was liable for $1,709 worth of repairs; and (2) that the Personal Representative was liable for property taxes due and payable before the estate closed in December 2013. *Jones I*, 32 N.E.3d 846 at *6. We remanded the case with instructions, and the trial court directed the Personal Representative "to prepare and file with [the trial court] a proposed order in conformity with [*Jones I*]." *Appellant's App. Vol. 2* at 15. On October 23, 2015, the Personal Representative filed the Amended Distribution Report, which included the Personal Representative's calculation of the debt the estate owed to Schaefer for 2013 Taxes. Listed among the estate's distributions was a prior payment to Schaefer in the amount of $1,709.00, which was a reimbursement for the repairs.[4]

---

[4] This payment was made in compliance with the trial court's December 2013 Order.

[21] The focus of the Amended Distribution Report was the debt the estate owed to Schaefer for 2013 Taxes. The Personal Representative began his calculation of that debt using numbers from the tax records of the Hamilton County Treasurer, which listed $5,070.48 as the amount due and payable for 2013 Taxes.[5] *Prior Case Exhibits Vol. 1, Ex.* 3; *Tr. Vol. 2* at 14-15. As credit against this debt, the Personal Representative subtracted two amounts: (1) $1,709.00 in repairs, an amount for which Schaefer had already been reimbursed; and (2) $1,586.00, an amount the estate paid Purchaser as advance payment for the 2013 Taxes. The latter amount, which was paid in two installments (1) had been approved as a disbursement in the Final Account and (2) was applied by Purchasers as payment toward the 2013 Taxes.[6] The cost of the repairs plus the prepayment tax resulted in the estate taking a credit of $3,295.00 against the $5,070.48 in 2013 Taxes owed to Schaefer by the estate. This left a balance due to Schaefer of $1,775.48.

---

[5] In *Jones I,* our court stated, without citation to the record, that the amount of taxes due and payable in 2013 was $5,093.76. *Jones I*, 32 N.E.3d 846 at *2. The Decedent's property consisted of Parcels 00A and 000. The Personal Representative contends that the Hamilton County Treasurer's total tax bill for taxes, penalties, and assessments due and payable in 2013 was $5,070.48, being comprised of (1) tax and special assessment due May 2013 for Parcel 00A in the amount of $2,520.82, (2) tax, special assessment, and penalty due May 2013 for Parcel 000 in the amount of $23.84, (3) tax due November 2013 for Parcel 00A in the amount of $2,505.82, and (4) no tax due November 2013 for Parcel 000. *Prior Case Exhibits Vol. 1*, *Ex.* 3; *Tr. Vol.* 2 at 14-15. We do not decide which of these amounts is the correct amount, but note that, by our calculation, the 2013 property tax statements, to which the Personal Representative cites, add up to a sum of $5,050.48, not $5,070.48 as he contends.

[6] During the hearing on the motion to correct error, the Personal Representative testified that Schaefer withdrew from the Hamilton County Treasurer the money allocated to her by the estate, and that thereafter, the "taxes went delinquent.*"* *Tr. Vol. 2* at 42.

[22] Since the residuary of the estate had been distributed in 2013, the Personal Representative could not pay Schaefer $1,775.48 from estate assets in October 2015. Instead, the debt had to be paid from a pool of money comprised of equal contributions from each of the four beneficiaries. As it would be pointless for Schaefer to pay herself her one-fourth share of the debt, the Personal Representative calculated $443.87 as Schaefer's one-fourth share, deducted that from the $1,775.48 due, and determined that Schaefer was owed $1331.61. The Personal Representative then added $213.09, which represented two years of statutory interest on that amount, and arrived at $1,544.70 as the total balance due from the estate to Schaefer. The Personal Representative attached to the Amended Distribution Report a copy of a cashier's check made out to Schaefer in the amount of $1,544.70 and sent that check to Schaefer's attorney as full payment of the debt.

[23] In her objections to the Amended Distribution Report, Schaefer asserted that the taxes and assessments owed to her totaled $5,371.42, plus interest, which represented (1) some delinquent 2013 Taxes and penalties, and (2) property taxes assessed in 2013 that were due and payable in 2014.[7] *Appellant's App. Vol. 2* at 73-74. Schaefer claimed that, pursuant to the trial court's August 2014 Order, the Personal Representative was obligated to pay Schaefer "all real estate assessments and taxes assessed on real estate

---

[7] At the December 2013 hearing on the Final Account, Schaefer had offered copies of the tax bills that were first due and payable in 2013. Those bills totaled $5,026.64 for Parcel 00A and $21.68 for Parcel 000.

transferred to [Schaefer] in December 2013, payable in 2014." *Id.* at 73. Schaefer also asserted that this decision was affirmed in *Jones I*. *Id*. The trial court accepted Schaefer's characterization and ordered the estate to pay Schaefer $5,371.42. *Appellant's App. Vol. 2* at 20.

[24] The Personal Representative filed a motion to correct error on October 24, 2016, contending that the trial court erred by concluding that the estate owed taxes due and payable in 2014. The Personal Representative argued that the August 2014 Order—directing the Personal Representative to pay the property taxes and assessments "due and payable prior to vesting of title in [Schaefer]"— was corrected by our court in *Jones I*, where we held that "title to the five acres 'passed' to Schaefer by operation of law at the death of the [D]ecedent, subject to possession in the [P]ersonal [R]epresentative, and that pursuant to I.C. § 29-1-14-9, no personal representative shall be required to pay property taxes on any property of the [D]ecedent unless the taxes are *due and payable before possession* thereof is delivered to the beneficiary." *Appellant's App. Vol. 2* at 124 (citing *Jones I*, 32 N.E.2d 846 at *5-6) (emphasis added). The Personal Representative argues that, because neither party sought further review of this court's decision in *Jones I*, it became law of the case and was binding on all parties. *Id*. We agree.

[25] In *Jones I*, our court decided that "pursuant to I.C. § 29-1-14-9, no personal representative shall be required to pay property taxes on any property of the [D]ecedent unless the taxes are *due and payable before possession* thereof is delivered to the beneficiary." *Jones I*, 32 N.E.2d 846 at *5-6 (emphasis

added).  Under the law of the case, the estate was only liable for taxes due and payable prior to December 2013.

[26]  Schaefer claims that the Personal Representative should not have reduced the amount she was owed for 2013 Taxes by deducting $1,586.00 and $1,709.00, both because those amounts are not issues in this appeal and because it was improper to offset those amounts against the estate's debt.  Accordingly, we must also address whether it was proper for the Personal Representative to credit offsets of $1,586.00 and $1,709.00 against the estate's debt.  Indiana Code section 29-1-17-6, in pertinent part, provides:  "When a distributee of an estate is indebted to the estate, the amount of the indebtedness if due, . . . may be treated as an offset by the personal representative against any testate or intestate property, real or personal, of the estate to which such distributee is entitled."

[27]  Here, the estate previously disbursed $1,586.00 toward the payment of the 2013 Taxes—this was money paid to Purchasers as an advance payment for the 2013 Taxes, which the Purchasers paid toward those taxes.  *Tr. Vol. 2* at 42.  The Personal Representative listed this payment in the Final Account, and Schaefer does not dispute that the estate properly disbursed this money to the Purchasers.  In 2013, Schaefer withdrew money from the Hamilton County Treasurer, money that had already been paid toward the 2013 Taxes. [8]  Without

---

[8] During the January 2017 hearing on the motions to correct error, counsel for the Personal Representative stated that Schaefer withdrew about $2,500.00 from the Hamilton County Treasurer, which was money that had been allocated toward the 2013 Taxes.  Counsel stated, "If [Schaefer] withdrew $2,500 and some change, then fine, she got that money.  But the Estate was responsible for paying the tax and we should get credit for

allowing this as a credit against the 2013 Taxes owed, the estate will essentially be paying this portion of the tax twice. Stated differently, since Schaefer had already withdrawn this amount from 2013 Taxes already paid, she was not entitled to receive that amount a second time. Accordingly, it was proper for the estate to credit its prior payment of $1,586.00 against the estate's payment of 2013 Taxes.

[28] Schaefer contends that a $1,709.00 credit for repairs was improper because that issue was not before this court. We disagree. The Amended Distribution Report was a final accounting of the estate's assets and disbursements. The trial court found the estate liable for repairs in its August 2014 Order, and thereafter, the estate paid Schaefer $1,709.00 as reimbursement for those repairs. The estate's liability for the repairs, however, was reversed in *Jones I*, and Schaefer was liable for the $1,709.00 payment. Because Schaefer had already been paid $1,709.00, a payment that was no longer warranted, Schaefer owed the estate $1,709.00. Pursuant to Indiana Code section 29-1-17-6, it was proper for the Personal Representative to offset the $1,709.00 that Schaefer owed the estate against the amount the estate owed Schaefer.

[29] Finding that the trial court abused its discretion when it denied the Personal Representative's motion to correct error and ordered the estate to pay

---

the part that we sold to the [Purchaser] who paid the taxes in 2013 as required by the purchase agreement." *Tr. Vol. 2* at 43.

$5,371.42, we reverse that order and approve a payment by the estate to Schaefer consistent with the Amended Distribution Report.

## II. Sanctions

[30] The Personal Representative contends that Schaefer acted in bad faith and misled the trial court, and therefore, should be responsible for the cost of this appeal, including attorney fees. Pursuant to Indiana Appellate Rule 66(E), an appellate court may assess damages, including attorney fees, if an appeal is frivolous or in bad faith. Indiana Code section 34-52-1-1(b) provides a similar remedy where a party "(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith." The Personal Representative contends that Schaefer's objections to the Amended Distribution Report and the ensuing appeal, merit the granting of such relief to the Personal Representative.

[31] The trial court denied the Personal Representative's Amended Distribution Report to the extent of Schaefer's objections. In her objection, Schaefer argued that the estate should be liable for delinquent 2013 Taxes and for taxes due and payable in 2014 ("2014 Taxes"). Schaefer's position regarding 2014 Taxes, arguably, ran counter to our decision in *Jones I*, where, citing to Indiana Code section 29-1-14-9, we held that "no personal representative shall be required to pay any taxes on any property of the decedent unless such taxes are due and payable before possession thereof is delivered by the personal representative

pursuant to the provisions of IC 29–1." *Jones I*, 32 N.E.3d 846 at *6. The Personal Representative asserts that Schaefer acted frivolously and in bad faith when she (1) improperly convinced the trial court that the estate was liable for 2014 taxes, when that position was contrary to this court's decision in *Jones I*; (2) ignored the fact that, under *Jones I*, Schaefer was liable for $1,709.00 of worth of repairs for which she had already been reimbursed; and (3) ignored that the estate had paid $1,586.00 to the Purchasers at closing, which represented an advance payment for the 2013 Taxes.

[32] As the Personal Representative recognizes, we are reluctant to impose sanctions; our discretion to award attorney fees under Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Ballaban v. Bloomington Jewish Cmty., Inc.*, 982 N.E.2d 329, 339-40 (Ind. Ct. App. 2013). "[W]e must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Id.* at 340. "A strong showing is required to justify an award of appellate damages and the sanction is not imposed to punish mere lack of merit but something more egregious." *Id.*

[33] The Personal Representative claims that he is entitled to attorney fees because Schaefer is trying to relitigate matters that were resolved in an earlier judgment, *i.e.*, her objections to the Amended Distribution Agreement were merely an attempt to relitigate whether the estate was liable for taxes due and payable for 2014. Under the law of the case, the Personal Representative owed Schaefer

nothing for taxes due and owing for 2014. However, Schaefer was correct that the estate was liable to her for the delinquency in the 2013 Taxes. Furthermore, the trial court believed that the estate was liable to Schaefer for the full $5,371.42. Under the facts of this case, we cannot say that Schaefer's claim was entirely frivolous or lacked merit. Accordingly, we deny the Personal Representative's request for attorney fees.

## III. Cross-Appeal on Attorney Fees

[34] In her cross appeal, Schaefer contends that the trial court erred in allowing the estate to pay attorney fees in the amount of $186,417.00, an amount that the parties had agreed to in the Settlement Agreement. Specifically, she argues that the Personal Representative failed to comply with the mandatory provisions of Hamilton County Local Probate Rule 711 ("Local Rule 711"), which directs: (1) no attorney fees shall be paid without prior written order of the court; and (2) if the testator does not provide for compensation of the estate's attorneys, the court may award "just and reasonable" attorney fees. "The awarding of attorneys' fees as part of the probate of an estate is governed by the Indiana Probate Code, IC 29-1-10-13 specifically, which authorizes the trial court to fix reasonable attorney and executor fees. The proper amount of these fees is within the trial court's discretion. *Matter of Smith*, 572 N.E.2d 1280, 1289 (Ind. 1991).

[35] To decide whether a fee is "just and reasonable" under Local Rule 711 and Indiana Code section 29-1-10-13, the trial court may consider several factors, including, the labor performed, the nature of the estate, difficulties in recovering

assets or locating devises, and the peculiar qualifications of the administrator and the attorney. Additionally, a trial court may consider "settlements in the estate." *Id.* at 1289.

[36] Clearly, the administration of Decedent's estate was contentious. Under the Settlement Agreement, the beneficiaries agreed to pay, and the attorneys agreed to receive as compromise and satisfaction of their claims, a total of $186,417.00.[9] *Prior Case Appellant's App*. at 40-41. These fees represented the work of seven attorneys, with five law firms, working for both the Personal Representative and Schaefer, on the Administration Case and the Contest Case, for a period of more than four years. Taking a hard look at what could be lost and what could be gained by entering into the Settlement Agreement, the parties provided the following rationale for agreeing to settle:

> The Original Parties, after consultations and extended negotiations and discovery through their respective counsel conducted over a period of many months after the commencement of such action have come to the conclusion that it would be in the best interest of all parties to compromise and settle such controversies and desire to compromise and settle the controversies as hereinafter provided.

---

[9] The parties to the Settlement Agreement were: Decedent's four children, five contingent beneficiaries--Sean F. Windle, Alexandra Windle, Alexis Tracy Schaefer, Wendi Biddle, and Arin Elizabeth Kunkle—and attorneys representing law firms to whom the estate owed money for work performed in connection with the Contest and Administration Cases. The attorneys and law firms were as follows: Michael R. Franceschini, Raymond M. Adler, John S. Terry, Russell B. Cate, Gregory L. Padgett, Jon E. Williams, and John R. Price who signed the Settlement Agreement on behalf of their respective law firms—Ayres Carr & Sullivan, P.C., Raymond M. Adler, P.C., Campbell Kyle Proffitt, LLP, Padgett Law, and Williams Barrett & Wilkowski, LLP.

*Id.* at 35.

[37] Pursuant to the Settlement Agreement, the attorney fees could not be paid without approval from the trial court. The Settlement Agreement set forth the condition of enforcement as follows:

> This Settlement Agreement and Release shall be of no force or effect until and unless the Hamilton County Superior Court No. 1, shall duly enter an order approving the same and directing the fiduciary who constitutes the Additional Party to execute it. Upon the making of such order by the Hamilton County Superior Court No. 1, the execution of this Compromise Agreement shall become effective and thereafter all further dispositions of the estate shall be in accordance with the substantive provisions of this Compromise and Settlement Agreement.

*Id.* at 36. The trial court approved the Settlement Agreement in March 2012. Thereafter, the attorneys were paid the agreed sum. Based on this evidence, we cannot say that the trial court abused its discretion when it allowed the Personal Representative to pay attorney fees in the amount of $186,417.00.

[38] Affirmed in part and reversed in part.

[39] Najam, J., and Brown, J., concur.